## ATHERTON *v.* ATHERTON.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 17.   Argued December 15, 1899.—Decided April 15, 1901.

A husband and wife had their matrimonial domicil in Kentucky, which was the domicil of the husband. She left him there, and returned to her mother's at Clinton in the State of New York.   He filed a petition against her in a court of Kentucky for a divorce from the bond of matrimony for her abandonment, which was a cause of divorce by the laws of Kentucky; and alleged on oath, as required by the statutes of Kentucky, that she might be found at Clinton, and that Clinton was the post-office nearest the place where she might be found.   The clerk, as required by those statutes, entered a warning order to the wife to appear in sixty days, and appointed an attorney at law for her.   The attorney wrote to her at Clinton, advising her of the object of the petition, and enclosing a copy thereof, in a letter addressed to her by mail at that place, and having on the envelope a direction to return it to him, if not delivered in ten days. A month later, the attorney, having received no answer, made his report to the court.  Five weeks afterwards, the court, after taking evidence, granted the husband an absolute decree of divorce for the wife's abandonment of him.  *Held,* that this decree was a bar to the wife's petition for a divorce in New York.

THIS was a suit brought January 11, 1893, in the Supreme Court of the State of New York, by Mary G. Atherton against Peter Lee Atherton, for a divorce from bed and board, for the custody of the child of the parties, and for the support of the plaintiff and the child, on the ground of cruel and abusive treatment of the plaintiff by the defendant.   The defendant appeared in the case; and at a trial by the court without a jury at June term, 1893, the court found the following facts:

On October 17, 1888, the parties were married at Clinton, Oneida County, New York, the plaintiff being a resident of that place, and the defendant a resident of Louisville, Kentucky. Immediately after the marriage, the parties went to and resided at Louisville, in the house with the defendant's parents, had a child born to them on January 8, 1890, and there continued to reside as husband and wife until October 3, 1891.   Then, owing

Statement of the Case.

to his cruel and abusive treatment, without fault on her part, she left him, taking the child with her, and in a few days thereafter, returned to her mother at Clinton, and has ever since resided there with her mother, and is a resident and domiciled in the State of New York, and has not lived or cohabited with the defendant. When she so left him and went to Clinton, she did so with the purpose and intention of not returning to the State of Kentucky, but of permanently residing in the State of New York; and this purpose and intention were understood by the defendant at the time, and were contemplated and evidenced by an agreement entered into, at Louisville, October 10, 1891, by the parties and one Henry P. Goodenow, under advice of counsel, which is copied in the margin.[1] The defendant con-

---

[1] The undersigned, Peter Lee Atherton, and his wife, Mary G. Atherton, having ceased to live together as man and wife, without in any way acknowledging upon whom is the fault, or condoning the conduct of the one or the other which has led to the existing state of affairs, or preventing any consequence which may follow, or right which may arise to either party if such status shall continue, desire to provide for the best interest of their child, Mary Valeria Atherton. With this view they have entered into the following agreement:

Peter Lee Atherton contracting with Henry P. Goodenow as trustee for Mary G. Atherton, and said trustee contracting with Peter Lee Atherton on behalf and jointly with Mary G. Atherton.

1. The child is hereby committed for its nurture, education and control to the joint custody and guardianship of her mother, Mary G. Atherton, and her paternal grandmother, Maria B. Atherton, on the following basis:

The domicil of the child is to be the State of Kentucky. The mother is to have the child until January 1, 1892. During the years 1892, 1893 and 1894 the grandmother is to have the child and control its abode, travel and custody from January 1st to the first week in May; and the mother from the first week in May to December 31st. After that period, during the existence of this arrangement, the grandmother's custody, control, etc., is to exist during the first four and last two months of the year; that of the mother during the other months of the year.

2. During that part of each year in which the child is under the control of the mother, Peter Lee Atherton is to pay into the hands of Mary G. Atherton $500 in instalments of equal amounts at the beginning of each of the months of said control, for the comfortable maintenance of the child. During the rest of each year, he is to himself at his sole expense provide for the support of the child. The expense of conveying the child, with a proper attendant in the journey, to the mother, Mary G. Atherton, is to be

tinued to reside in Louisville, and is a resident of the State of Kentucky.

The defendant, in his answer, besides denying the cruelty charged, set up a decree of divorce from the bond of matrimony, obtained by him against his wife March 14, 1893, in a court of Jefferson County in the State of Kentucky, empowered to grant divorces, by which " This action having come on to be heard upon the pleadings, report of attorney for the absent defendant, and the evidence and the court being advised, it is considered

---

borne by the father; Peter Lee Atherton, and the like expense, on the journey back to the grandmother, is to come out of the sum provided for the child's support.

3. Peter Lee Atherton is to pay into the hands of Mary G. Atherton for her support $125 at the beginning of each month, until this agreement does by its own terms end. This is to be taken in lieu of alimony and dowable and distributable share in his estate.

4. The following provisions are made for the termination of this agreement, and for the contingency of various events that may happen in the future; among others, divorce and second marriage of Peter Lee Atherton or Mary G. Atherton.

*a.* This agreement as to the child is to terminate on her arrival at fourteen years of age, it being recognized that she will then be old enough to choose for herself. It shall, of course, in like manner terminate at her death.

*b.* This agreement as to the support of Mary G. Atherton is to end at her death, or upon her again marrying, and in any event on the 8th day of January, 1904.

*c.* If Mary G. Atherton shall marry again or die, the person then being joint guardian with her of the child shall become its sole guardian. If Maria B. Atherton shall die while she is joint guardian, Peter Lee Atherton, if alive, or if he be dead, his father, John M. Atherton, shall choose a successor in the joint guardianship; and if Mary G. Atherton objects to the person so nominated, the senior (in years) judge of the Jefferson circuit court shall decide the question of fitness, and confirm or reject such nomination.

*d.* A successor to said successor may under similar circumstances be in like manner chosen.

*e.* If, during the existence of this agreement, Mary G. Atherton being then joint guardian, John M. Atherton and Maria B. Atherton shall die, and Peter Lee Atherton die or be or become married, the sole guardianship shall rest in said Mary G. Atherton.

*f.* If, during the lives of Peter Lee Atherton and Mary G. Atherton, a sole guardianship shall have resulted under the terms of this agreement,

by the court that the plaintiff, Peter Lee Atherton, has resided in Jefferson County, Kentucky, continuously for ten years last past; and that he and the defendant, Mary G. Atherton, were married on the 17th day of October, 1888; that from the date of said marriage the said plaintiff and defendant resided in Jefferson County, Kentucky; that while the plaintiff and defendant were thus residing in Jefferson County, Kentucky, to wit, in the month of October, 1891, the defendant, Mary G. Atherton, without fault upon the part of the plaintiff, abandoned him, and that said abandonment has continued without interruption from that time to this, and at the filing of the petition herein had existed for more than one year; that the defendant, Mary G. Atherton, had, at the filing of the petition herein, been absent from this State for more than four months; that therefore it is further considered and adjudged by the court that the plaintiff, Peter Lee Atherton, is entitled to the decree of divorce prayed for in this petition, and that the bonds of matrimony between the said plaintiff, Peter Lee Atherton, and the said defendant, Mary G. Atherton, be and they are hereby dissolved."

By the record of that decree, duly verified, the following appeared: On December 28, 1892, the plaintiff filed a petition under oath, containing the same statements as the decree, and also stating "that the said defendant may be found in Clinton, State of New York, and that in said Clinton is kept the post-office which is nearest to the place where the defendant may be found." On the same day, pursuant to the requirements of the statutes of Kentucky, the clerk made an order, warning the defendant to appear within sixty days and answer the peti-

---

each parent shall have reasonable access to and right of visitation from the child, notwithstanding such parent may have again married.

*g.* If a divorce shall be granted, this agreement, so far as it concerns provision for Mary G. Atherton, shall be carried into the decree, as in full satisfaction of all claim for alimony, and so far as concerns provision for and custody of the child, reserving to the court the usual power to provide against events and contingencies not covered by this agreement.

Witness the signatures of all the parties this October 10th, 1891.

HENRY P. GOODENOW.
MARY G. ATHERTON.
PETER LEE ATHERTON.

tion, and appointing John C. Walker, an attorney of the court, to defend for her and in her behalf, and to inform her of the nature and pendency of the suit. On February 6, 1893, Walker filed his report, in which he stated : " On this, the 5th day of January, 1893, I wrote to said defendant, Mary G. Atherton, at Clinton, in the State of New York, fully advising her of the objects and purposes of this action, stating therein a substantial copy of the petition, &c., plainly directed said letter to her at said place, paid the postage, had printed on the envelope enclosing it, ' If not delivered in ten days return to Jno. C. Walker, attorney at law, No. 516 West Jefferson street, Louisville, Ky.' Said letter has not been returned to me. I have received no answer thereto from said defendant or any one else for her, and do not know nor am I advised of any defence to make for her, and make none, only that which the law in such cases makes for non-resident defendants." The agreement of October 10, 1891, before mentioned, and certain depositions, set forth in full, taken at various dates from February 23 to March 3, 1893, were filed in the cause in Kentucky before the hearing.

It was agreed that either party might refer to any statute of the State of Kentucky, or decision of its courts.

The Supreme Court of New York found that the wife " was not personally served with process within the State of Kentucky, or at all, nor did she in any manner appear, or authorize an appearance for her, in the said action and proceeding ;" and that before the commencement of that suit, and ever since, she had ceased to be a resident of Kentucky, and had become and was a resident of the State of New York, domiciled and residing in Clinton, with her child.

The court decided that the decree in Kentucky was inoperative and void as against the wife, and no bar to this action; and gave judgment in her favor for a divorce from bed and board, and for the custody of the child, and for the support of herself and the child.

That judgment was affirmed by the general term of the Supreme Court of New York, and by the Court of Appeals of the State. 82 Hun, 179 ; 155 N. Y. 129.

The defendant sued out this writ of error, on the ground that the judgment did not give full faith and credit to the decree of the court in Kentucky, as required by the Constitution and laws of the United States.

*Mr. Alexander Pope Humphrey* for plaintiff in error. *Mr. George M. Davie* was on his brief.

*Mr. William Kernan* for defendant in error.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The first section of the fourth article of the Constitution of the United States is as follows: "Full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. And the Congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof." This section was intended to give the same conclusive effect to the judgments of all the States, so as to promote certainty and uniformity in the rule among them. And Congress, in the exercise of the power so conferred, besides prescribing the manner in which the records and judicial proceedings of any State may be authenticated, has defined the effect thereof, by enacting that "the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." Rev. Stat. § 905, reënacting act of May 26, 1790, c. 11, 1 Stat. 122; *Huntington* v. *Attrill*, (1892) 146 U. S. 657, 684.

By the General Statutes of Kentucky of 1873, c. 52, art. 3, courts of equity may grant a divorce for abandonment by one party of the other for one year; petitions for divorce must be brought in the county where the wife usually resides if she has an actual residence in the State; if not, then in the county of the husband's residence; and shall not be taken for confessed,

or be sustained by confessions of the defendant alone, but must be supported by other proofs.

By the Civil Code of Practice of Kentucky of 1876, tit. 4, c. 2, art. 2, if a defendant has been absent from the State four months, and the plaintiff files an affidavit stating in what country the defendant resides or may be found and the name of the place wherein a post-office is kept nearest to the place where the defendant resides or may be found, the clerk may make an order warning the defendant to defend the action within sixty days; and shall at the same time appoint, as attorney for the defendant, a regular practising attorney of the court, whose duty it shall be to make diligent efforts to inform the defendant by mail concerning the pendency and nature of the action against him, and to report to the court the result of his efforts; and a defendant against whom a warning order is made, and for whom an attorney is appointed, is deemed to have been constructively summoned on the thirtieth day thereafter, and the action may proceed accordingly.

In accordance with these statutes, on December 28, 1892, the husband filed in a proper court of Kentucky a petition, under oath, for a divorce from the bond of matrimony, alleging his wife's abandonment of him ever since October, 1891, and that she had been absent from the State for more than four months, and might be found at Clinton in the State of New York, and that in Clinton was kept the post-office nearest the place where she might be found; and the clerk entered a warning order, and appointed an attorney at law for the defendant. On January 5, 1893, that attorney wrote to the wife at Clinton, fully advising her of the object of the petition for divorce, and enclosing a copy thereof, in a letter addressed to her by mail at that place, and having printed on the envelope a direction to return it to him, if not delivered within ten days. On February 6, 1893, the attorney, not having received that letter again, or any answer from the defendant, or in her behalf, made his report to the court. And on March 14, 1893, the court, after taking evidence, including an agreement made by the parties in Kentucky, October 10, 1891, as to the domicil, custody and support

of their child, granted to the husband an absolute divorce for his wife's abandonment of him.

There can be no doubt that this decree was by law and usage entitled to full faith and credit as an absolute decree of divorce in the State of Kentucky. The Court of Appeals of that State has held that, under its statutes, a wife residing in the State was entitled to obtain a decree of divorce against a husband who had left the State, or who had never been within it; and Chief Justice Robertson said: "It would be a reproach to our legislation if a faithless husband in Kentucky could, by leaving the State, deprive his abandoned wife of a power of obtaining a divorce at home." *Rhyms* v. *Rhyms,* (1870) 7 Bush, 316; *Perzel* v. *Perzel,* (1891) 91 Kentucky, 634. That court has recognized that the regulation of divorce belongs to the legislature of the domicil of the parties. *Maguire* v. *Maguire,* (1838) 7 Dana, 181, 185–187. And the same court, where husband and wife had lived together in Kentucky, and she abandoned him, and he became a *bona fide* citizen of Indiana, held that a divorce from the bonds of matrimony, obtained by him against the wife in that State, by proceedings on constructive service, and according to the laws of that State, determined the status of the parties in Kentucky. *Hawkins* v. *Ragsdale,* (1882) 80 Kentucky, 353.

There is a weight of authority in accord with the views maintained by the Court of Appeals of Kentucky, although there are some decisions of learned courts to the contrary.

The purpose and effect of a decree of divorce from the bond of matrimony, by a court of competent jurisdiction, are to change the existing status or domestic relation of husband and wife, and to free them both from the bond. The marriage tie, when thus severed as to one party, ceases to bind either. A husband without a wife, or a wife without a husband, is unknown to the law. When the law provides, in the nature of a penalty, that the guilty party shall not marry again, that party, as well as the other, is still absolutely freed from the bond of the former marriage.

The rule as to the notice necessary to give full effect to a

decree of divorce is different from that which is required in suits *in personam.*

In *Pennoyer* v. *Neff,* (1877) 95 U. S. 714, 734, this court, speaking by Mr. Justice Field, while deciding that a judgment of a state court on a debt could not be supported without personal service on the defendant within the State or his appearance in the cause, took occasion to say : " To prevent any misapplication of the views expressed in this opinion, it is proper to observe that we do not mean to assert, by anything we have said, that a State may not authorize proceedings to determine the status of one of its citizens towards a non-resident, which would be binding within the State, though made without service of process or personal notice to the non-resident. The jurisdiction which every State possesses to determine the civil status and capacities of all its inhabitants involves authority to prescribe the conditions on which the proceedings affecting them may be commenced and carried on within its territory. The State, for example, has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved. One of the parties, guilty of acts for which, by the law of the State, a dissolution may be granted, may have removed to a State where no dissolution is permitted. The complaining party would therefore fail if a divorce were sought in the State of the defendant; and if application could not be made to the tribunals of the complainant's domicil in such case, and proceedings be there instituted without personal service of process or personal notice to the offending party, the injured citizen would be without redress.    2 Bishop on Marriage and Divorce, § 156."

In *Cheeley* v. *Clayton,* (1884) 110 U. S. 701, which involved the validity of a decree of divorce, obtained in Colorado by a husband domiciled there, against his wife for unjustifiably refusing to live with him, this court said : " The courts of the State of the domicil of the parties doubtless have jurisdiction to decree a divorce in accordance with its laws, for any cause allowed by those laws, without regard to the place of the marriage, or to that of the commission of the offence for which the divorce is granted ; and a divorce so obtained is valid everywhere.

Story, Conflict of Laws, § 230*a ; Cheever* v. *Wilson*, 9 Wall. 108 ; *Harvey* v. *Farnie*, 8 App. Cas. 43.   If a wife is living apart from her husband without sufficient cause, his domicil is in law her domicil ; and in the absence of any proof of fraud or misconduct on his part, a divorce obtained by him in the State of his domicil, after reasonable notice to her, either by personal service or by publication in accordance with its laws, is valid, although she never in fact resided in that State.   *Burlen* v. *Shannon*, 115 Mass. 438 ; *Hunt* v. *Hunt*, 72 N. Y. 218.   But in order to make the divorce valid, either in the State in which it is granted or in another State, there must, unless the defendant appeared in the suit, have been such notice to her as the law of the first State requires."   110 U. S. 705.   In that case the decree of divorce was held void, because the notice required by the laws of the State had not been given ; and the finding of the court below that the wife, at the time of the proceedings for divorce, was a citizen and resident of the State of Illinois, was given no weight, because, as this court said, it was hard to see how, if she unjustifiably refused to live with her husband in Colorado, she could lawfully acquire in his lifetime a separate domicil in another State ; or how, if the Colorado court had jurisdiction to render the decree of divorce, and did render it upon the ground of her unlawful absence from him, the finding of the court below could consist with the fact so adjudged in the decree of divorce.   110 U. S. 709.

In *Harding* v. *Alden*, (1832) 9 Greenl. 140, the husband and wife lived together in Maine.   He deserted her, and took up a residence in North Carolina, and there married and lived with another woman.   The first wife then moved to and resided in Providence, Rhode Island, and there filed a libel in the Supreme Judicial Court for an absolute divorce against him for his desertion and adultery ; and the court, after service of a citation on him, and two continuances of the cause, decreed a divorce as prayed for.   The husband was never an inhabitant of Rhode Island.   The wife afterwards married another man. The Supreme Judicial Court of Maine, in an opinion delivered by Mr. Justice Weston, held that the divorce in Rhode Island dissolved the bond of marriage between the parties ; and said :

" If we refuse to give full faith and credit to the decree of the
Supreme Judicial Court of Rhode Island, because the party
libelled had his domicil in another State, and was not within
their jurisdiction, we refuse to accord to the decrees of that
court the efficacy we claim for our own, when liable to the sam-
objection. In the case before us, it is agreed that the party in-
jured was at the time an inhabitant of Rhode Island, residing
in Providence, and this fact is recited in the decree. It appears
that by order of the court a citation was served upon the de-
fendant in person; and that a continuance was twice granted,
to give him an opportunity to appear in defence. This shows
a due regard to that principle of justice, which gives to the
party accused the right to be heard. The decree was rendered
by the highest judicial tribunal in that State. As it belongs to
that tribunal to declare, authoritatively and definitively, what
the law of the State is, we are bound to infer that by that law
the bonds of matrimony, previously existing between the libel-
lant and her former husband, were thereby dissolved; and that
such is the effect of the decree within the State of Rhode Is-
land." 9 Greenl. 148. "There would be great inconvenience
in holding that a divorce decreed in the State where the in-
jured party resided might not be held valid through the
Union, where the right of citizenship is common, where the
party accused had established his domicil in another State,
and there committed adultery. And this is the only objection
to the efficacy of the decree in question; it being insisted
that the court had no jurisdiction over the absent party. As
has been before intimated, it would apply with equal force
to many divorces decreed in this State. It would require that
the wife, abandoned and dishonored, should seek the new dom-
icil of the guilty husband, *animo manendi*, before she could
claim the benefit of the law to be relieved from his control.
In giving effect here to the divorce decreed in Rhode Island,
we would wish to be understood, that the ground upon which
we place our decision is limited to the dissolution of the mar-
riage. In the libel, alimony was prayed for; and certain per-
sonal property, then in the possession of the wife, was decreed
to her. Had the court awarded her a gross sum, or a weekly

or an annual allowance, to be paid by the husband, and the courts of this or any other State had been resorted to to enforce it, a different question would be presented." 9 Greenl. 151.

Chancellor Kent, in his Commentaries, says of that case that it was there held "that a decree of divorce did not fall within the rule that a judgment rendered against one not within the State, nor bound by its laws, nor amendable to its jurisdiction, was not entitled to credit against the defendant in another State ; and that divorces pronounced according to the law of one jurisdiction, and the new relations thereupon formed, ought to be recognized, in the absence of all fraud, as operative and binding everywhere, *so far as related to the dissolution of the marriage*, though not as to other parts of the decree, such as an order for the payment of money by the husband." And the Chancellor adds, "This is an important and valuable decision." 2 Kent Com. 110, note.

In *Ditson* v. *Ditson*, (1856) 4 Rhode Island, 87, (of which Judge Cooley, in his Treatise on Constitutional Limitations, 403, note, says there is no case in the books more full and satisfactory upon the whole subject of jurisdiction in divorce suits,) the Supreme Court of Rhode Island, in an elaborate opinion by Chief Justice Ames, affirmed its jurisdiction, upon constructive notice by publication, to grant a divorce to a wife domiciled in Rhode Island against a husband who had never been in Rhode Island, and whose place of residence was unknown ; and said : "It is obvious that marriage, as a domestic relation, emerged from the contract which created it, is known and recognized as such throughout the civilized world ; that it gives rights and imposes duties and restrictions upon the parties to it, affecting their social and moral condition, of the measure of which every civilized State, and certainly every State of this Union, is the sole judge so far as its own citizens or subjects are concerned, and should be so deemed by other civilized, and especially sister States ; that a State cannot be deprived, directly or indirectly, of its sovereign power to regulate the status of its own domiciled subjects and citizens, by the fact that the subjects and citizens of other States, as related to them, are interested in that status ; and in such a matter has a right, under the general law,

judicially to deal with and modify or dissolve this relation, binding both parties to it by the decree, by virtue of its inherent power over its own citizens and subjects, and to enable it to answer their obligatory demands for justice; and finally, that in the exercise of this judicial power, and in order to the validity of a decree of divorce, whether *a mensa et thoro* or *a vinculo matrimonii*, the general law does not deprive a State of its proper jurisdiction over the condition of its own citizens, because non-residents, foreigners or domiciled inhabitants of other States have not or will not become, and cannot be made to become, personally subject to the jurisdiction of its courts; but upon the most familiar principles, and as illustrated by the most familiar analogies of general law, its courts may and can act conclusively in such a matter upon the rights and interests of such persons, giving to them such notice, actual or constructive, as the nature of the case admits of, and the practice of courts in similar cases sanctions." 4 Rhode Island, 105, 106.

The statutes of Massachusetts provided as follows : " When an inhabitant of this State goes into another State or country to obtain a divorce for any cause occurring here, and whilst the parties resided here, or for any cause which would not authorize a divorce by the laws of this State, a divorce so obtained shall be of no force or effect in this State. In all other cases, a divorce decreed in any other State or country according to the laws thereof, by a court having jurisdiction of the cause and both the parties, shall be valid and effectual in this State." That provision made no change in the law, but, in the words of the Commissioners upon whose advice it was first enacted, " is founded on the rule established by the comity of all civilized nations; and is proposed merely that no doubt should arise on a question so interesting and important as this may sometimes be." Gen. Stat. of 1860, c. 107, §§ 54, 55; Rev. Stat. of 1836, c. 76, §§ 39, 40, and note of Commissioners; *Ross* v. *Ross*, 129 Mass. 243, 248.

In *Hood* v. *Hood*, (1865) 11 Allen, 196, the husband and wife, after living together in Massachusetts, removed to Illinois, and there lived together; the wife, " under circumstances as to which there was no evidence," and afterwards the husband,

came back to Massachusetts, and, while they were living there in his brother-in-law's house for a few weeks, he signed an agreement, reciting that they had separated, and promising to pay her a certain weekly sum so long as she should remain single. She continued to reside in Massachusetts ; and he obtained in Illinois a decree of divorce from her for her desertion, upon such notice as the laws of Illinois authorized in the case of an absent defendant. It was held by the Supreme Judicial Court of Massachusetts, in an opinion delivered by Mr. Justice Hoar, that both parties had their domicil in Illinois, and were subject to the jurisdiction of its courts ; and that the fact of desertion by the wife was conclusively settled between the parties by the decree in Illinois, and it was not competent for the wife to contradict it on a libel afterwards filed by her in Massachusetts; and her libel was dismissed. And in *Hood* v. *Hood*, (1872) 110 Mass. 463, it appearing that such dismissal was upon the ground of the validity of the previous decree of divorce in Illinois, it was adjudged that that decree could not be impeached by the wife in a writ of dower by her against third persons, the court saying : " The decree in favor of her husband, dismissing her libel, was then forever conclusive against her, as between themselves. It severed the relation between them; or rather estopped her from averring anything to the contrary of the decree in Illinois which purported to sever that relation. The general rule, however, in regard to estoppels of record, is that they are good only between the parties of record and their privies. They cannot be set up in collateral proceedings between one of those parties and third persons. But the effect of the judgment in this case was to determine the status of the demandant. So far as it did that, it is a judgment that is operative and conclusive as to all the world."

The like view has been affirmed by courts of other States. *Thompson* v. *State*, (1856) 28 Alabama, 13 ; *Leith* v. *Leith*, (1859) 39 N. H. 20, 39–43 ; *Shafer* v. *Bushnell*, (1869) 24 Wisconsin, 372 ; *Gould* v. *Crow*, (1874) 57 Missouri, 200 ; *Van Orsdal* v. *Van Orsdal*, (1885) 67 Iowa, 35 ; *Smith* v. *Smith*, (1891) 43 La. Ann. 1140 ; *In re James*, (1893) 99 California, 374 ; *Dunham* v. *Dunham*, (1896) 162 Illinois, 589, 607–610.

In *Shaw* v. *Shaw*, (1867) 98 Mass. 158, the husband and wife, domiciled in Massachusetts, left the State to take up their residence in Colorado. In Pennsylvania, on the journey, he treated her with extreme cruelty, and she left him and returned to Massachusetts, and continued to reside there. It was held that while they were in Pennsylvania the domicil of both parties remained in Massachusetts, and that the wife might maintain a libel in Massachusetts for the cause occurring in Pennsylvania, although the husband before it occurred had left Massachusetts with the intention of never returning, and never did in fact return, and therefore no notice was or could be served upon him in Massachusetts.

In a very recent case, the Court of Errors of New Jersey maintained the validity of a divorce obtained in the State of Utah by a husband, having his *bona fide* domicil there, against a wife whose domicil was in New Jersey, after publication of the process and complaint in accordance with the statutes of Utah, and personal service upon the wife in New Jersey in time to enable her to make defence, if she wished to do so. Mr. Justice Gummere, speaking for the Court of Errors, said that, at least, " interstate comity requires that a decree of divorce, pronounced by a court of the State in which the complainant is domiciled, and which has jurisdiction of the subject-matter of the suit, shall, in the absence of fraud, be given full force and effect within the jurisdiction of a sister State, notwithstanding that the defendant does not reside within the jurisdiction of the court which pronounced the decree, and has not been served with process therein ; provided that a substituted service has been made in accordance with the provisions of the statute of that State, and that actual notice of the pendency of the suit has been given to the defendant, and a reasonable opportunity afforded to put in a defence thereto ; and provided, further, that the ground upon which the decree rests is one which the public policy of the State in which it is sought to be enforced recognizes as a sufficient cause for divorce." *Felt* v. *Felt*, (1899) 14 Dickinson (59 N. J. Eq.).

In New York, North Carolina and South Carolina, the opposite view has prevailed, either upon the ground that the rule

as to notice is the same in suits for divorce as in ordinary suits *in personam*, or upon the ground that, in the absence of actual notice or appearance, the decree, while it may release the libellant, cannot release the libellee, from the bond of matrimony. *People* v. *Baker*, (1879) 76 N. Y. 78; *O'Dea* v. *O'Dea*, (1885) 101 N. Y. 23; *In re Kimball*, (1898) 155 N. Y. 62; *Irby* v. *Wilson*, (1837) 1 Dev. & Bat. Eq. 568; *McCreery* v. *Davis*, (1894) 44 So. Car. 195.

In *People* v. *Baker*, 76 N. Y. 78, upon which the subsequent decisions in New York are based, the defendant was married to a woman in the State of Ohio; they afterwards lived together in the State of New York; the wife, upon notice by publication, and without personal appearance of the husband, he being in New York, obtained a decree of divorce against him in Ohio; and he afterwards married another woman in New York, and was convicted of bigamy there. The conviction was affirmed by the Court of Appeals, without a suggestion that the first wife was not domiciled in Ohio at the time of the divorce, but stating the question in the case to be: "Can a court, in another State, adjudge to be dissolved and at an end the matrimonial relation of a citizen of this State, domiciled and actually abiding here throughout the pendency of the judicial proceedings there, without a voluntary appearance by him therein, and with no actual notice to him thereof, and without personal service of process on him in that State?" The court admitted that " if one party to a proceeding is domiciled in a State, the status of that party, as affected by the matrimonial relation, may be adjudged upon and confirmed or changed, in accordance with the laws of that State;" but held that, without personal appearance or actual notice, the decree could not affect the matrimonial relation of the defendant in another State. The court recognized that the law was settled otherwise in some States, and said: "It remains for the Supreme Court of the United States, as the final arbiter, to determine how far a judgment rendered in such a case, upon such substituted service of process, shall be operative without the territorial jurisdiction of the tribunal giving it."

The authorities above cited show the wide diversity of opin-

ion existing upon this important subject, and admonish us to confine our decision to the exact case before us.

This case does not involve the validity of a divorce granted, on constructive service, by the court of a State in which only one of the parties ever had a domicil; nor the question to what extent the good faith of the domicil may be afterwards inquired into. In this case, the divorce in Kentucky was by the court of the State which had always been the undoubted domicil of the husband, and which was the only matrimonial domicil of the husband and wife. The single question to be decided is the validity of that divorce, granted after such notice had been given as was required by the statutes of Kentucky.

The husband always had his domicil in Kentucky; and the matrimonial domicil of the parties was in Kentucky. On December 28, 1892, the husband filed his petition for a divorce in the court of appropriate jurisdiction in Kentucky, alleging an abandonment of him by the wife in Kentucky, and a continuance of that abandonment for a year, which was a cause of divorce by the laws of Kentucky. His petition truly stated, upon oath, as required by the statutes of Kentucky, that the wife might be found at Clinton in the State of New York, and that at Clinton was the post-office nearest the place where she might be found. As required by the statutes of Kentucky, the clerk thereupon entered a warning order to the wife to appear in sixty days, and appointed an attorney at law to represent her. The attorney, on January 5, 1893, wrote to the wife at Clinton, fully advising her of the object of the petition for divorce, and enclosing a copy thereof, in a letter addressed to her by mail at Clinton, and having printed on the envelope a direction to return it to him, if not delivered in ten days. There is a presumption of fact, though not of law, that a letter, put into the post-office, and properly addressed, is received by the person to whom it is addressed. *Rosenthal* v. *Walker*, (1884) 111 U. S. 185. On February 6, 1893, the attorney, having received no answer, made his report to the court. And on March 14, 1893, the court, after taking evidence, granted the husband an absolute decree of divorce for his wife's abandonment of him.

The court of New York has indeed found that the wife "was

not personally served with process within the State of Kentucky, or at all." It may be doubted whether this negatives her having received, or had knowledge of, the letter sent to her by the attorney in Kentucky, January 5, 1893, six days before she began her suit in New York. But assuming that it does, the question in this case is not whether she had actual notice of the proceedings for divorce, but whether such reasonable steps had been taken to give her notice, as to bind her by the decree in the State of the domicil.

The court in New York found that the wife left the husband and went to Clinton with the purpose and intention of not returning to the State of Kentucky, but of permanently residing in the State of New York; and that this purpose and intention were understood by the husband at the time, and were contemplated and evidenced by the agreement executed by the parties in Kentucky, October 10, 1891. But that agreement was among the proofs submitted to the court in Kentucky, and may well have been considered by that court, as the preamble to the agreement states, as simply intended to provide for the interest of their child, recognizing that the parties had ceased to live together as husband and wife, but " without in any way acknowledging upon whom is the fault, or condoning the conduct of the one or the other which has led to the existing state of affairs, or preventing any consequence which may follow, or right which may arise to either party if such status shall continue." The agreement contains no mention of the domicil of either husband or wife, but declares that the domicil of the child is to be the State of Kentucky, and is taken up with providing that its custody shall be half of each year with the mother, and the other half with the paternal grandmother, and with providing for the support and custody of the child, in various future contingencies, including the divorce and second marriage of the husband or of the wife.

We are of opinion that the undisputed facts show that such efforts were required by the statutes of Kentucky, and were actually made, to give the wife actual notice of the suit in Kentucky, as to make the decree of the court there, granting a divorce upon the ground that she had abandoned her husband,

as binding on her as if she had been served with notice in Kentucky, or had voluntarily appeared in the suit. Binding her to that full extent, it established, beyond contradiction, that she had abandoned her husband, and precludes her from asserting that she left him on account of his cruel treatment.

To hold otherwise would make it difficult, if not impossible, for the husband to obtain a divorce for the cause alleged, if it actually existed. The wife not being within the State of Kentucky, if constructive notice, with all the precautions prescribed by the statutes of that State, were insufficient to bind her by a decree dissolving the bond of matrimony, the husband could only get a divorce by suing in the State in which she was found; and by the very fact of suing her there he would admit that she had acquired a separate domicil, (which he denied,) and would disprove his own ground of action that she had abandoned him in Kentucky.

The result is that the courts of New York have not given to the Kentucky decree of divorce the faith and credit which it had by law in Kentucky, and that therefore their

*Judgments must be reversed, and the case remanded to the Supreme Court of New York for further proceedings not inconsistent with this opinion.*

Mr. Justice Peckham, with whom The Chief Justice concurred, dissenting.

I think this case was rightly decided by the Court of Appeals of New York, and I therefore dissent from the judgment and the opinion of the court herein.

I think if the husband had, at his domicil in Kentucky, been guilty of such misconduct and cruelty towards his wife as entitled her to a divorce, she had a legal right for that reason to leave him and to acquire a separate domicil, even in another State. If, under such circumstances, she did leave him, and did acquire a separate domicil in New York State, the Kentucky court did not obtain jurisdiction over her as an absent defendant, by publication of process or sending a copy thereof through the mail to her address in New York.

It has long been held that the wife upon such facts could acquire a separate domicil. In *Cheever* v. *Wilson,* 9 Wall. 108, 123, 124, it was so decided, and the case of *Ditson* v. *Ditson,* 4 R. I. 87, was therein cited with approval upon that proposition. It was said in the Rhode Island case that "Although as a general doctrine the domicil of the husband is by law that of the wife, yet when he commits an offence, or is guilty of such dereliction of duty in the relation as entitled her to have the marriage either partially or totally dissolved, she not only may but *must,* to avoid condonation, establish a separate domicil of her own. This she may establish, nay, when deserted, or compelled to leave her husband, necessity frequently compels her to establish it in a different judicial or state jurisdiction than that of her husband, according to the residence of her family or friends. Under such circumstances she gains, and is entitled to gain, for the purposes of jurisdiction, a domicil of her own." This is also held in *Hunt* v. *Hunt,* 72 N. Y. 217, where many of the authorities are collected.

By the statute of New York in force at the time the parties were therein married, the court had jurisdiction to grant a limited divorce on the complaint of a married woman, where the marriage had been solemnized in the State and the wife was an actual resident therein at the time of exhibiting her complaint. By virtue of this statute and of the wife's residence in New York at the time of exhibiting her complaint, (if such residence were legally acquired, as already stated,) the court in that State had jurisdiction of an action for divorce against her husband, and jurisdiction over the husband was complete when he appeared in the suit. Having the right to acquire a residence in the State, it was open to her to prove in the divorce case which she instituted in New York the facts which justified her leaving her husband's home in Kentucky and in acquiring a separate domicil in New York, and the decision of the Kentucky court, that it had jurisdiction over her in her husband's suit, was not conclusive against her upon that question. The New York court entered upon the inquiry and found the fact that she was justified by her husband's acts in leaving his home and in acquiring a new domicil for herself, and that the Kentucky court

therefore obtained no jurisdiction over her. It also found the facts necessary to warrant it in granting to her a divorce under the laws of New York, and it granted one accordingly. This I think the New York court had jurisdiction to do, and it did not thereby refuse the constitutional full faith to the Kentucky judgment.

That a husband can drive his wife from his home by conduct which entitles her to a divorce, and thus force her to find another domicil, and then commence proceedings in a court of his own domicil, for a divorce, which court obtains jurisdiction over her only by a service of process in the State of her new domicil, through the mail, and that on such service he can obtain a judgment of divorce which shall be conclusive against her in her action in the court of her own domicil, seems to me to be at war with sound principle and the adjudged cases. The doctrine of status, even as announced in the opinion of the court, does not reach the case of a husband by his misconduct rendering it necessary for the wife to leave him. I therefore dissent.

I am authorized to state that the CHIEF JUSTICE concurs in this dissent.