(54 Misc. 410)

## RANSOM v. RANSOM.

(Supreme Court, Special Term, New York County.  May 7, 1907.)

1. DIVORCE—JURISDICTION—WIFE'S DOMICILE.

Though the wife's domicile is, for general purposes, determined by her husband's, she may, by leaving him for just cause, acquire a residence in another state, in which she may sue for divorce.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Divorce, §§ 217, 218.]

2. SAME—PUBLICATION—SERVICE—VALIDITY.

Where a resident of New York was sued for divorce in Virginia, where he never resided, he being not served with process in Virginia and having not voluntarily appeared in the action, jurisdiction was not acquired over him; and hence the decree against him is not binding in New York, though he himself suggested a legal separation, had been the guilty cause of the actual separation, knew of the decree, and took its granting as an occasion to demand the return of presents he had made to her.

Action by Porte V. Ransom against Eva B. H. Ransom. Judgment for plaintiff.

George P. Breckinridge, for plaintiff.
Wilmer & Canfield, for defendant.

DOWLING, J. On June 4, 1890, at the city of New York, the defendant herein, a resident of the state of Virginia, was married to plaintiff, then and continuously since a resident of the state of New York. They resided in New York City until May, 1898, when by reason of plaintiff's habits of life defendant was obliged to leave him, returning to her old home in Virginia, whence she finally, in October of the same year, returned to this city at plaintiff's solicitation, resuming her domicile with him. In February, 1899, and again because of plaintiff's misconduct, defendant was obliged to leave plaintiff, and after a temporary sojourn in Baltimore and a visit to New York she finally took up her residence with her children in Virginia, of which state she has ever since been a resident. In April, 1900, plaintiff wrote to defendant, suggesting that the separation then subsistent for a year be made legal. In March, 1901, defendant brought suit for absolute divorce against the plaintiff in the circuit court of Madison county, Va., upon the ground of plaintiff's adultery, committed in New York City. A decree in favor of this defendant was rendered in said action in September, 1901, without personal service upon the plaintiff herein and without his having appeared in the action. In the spring of 1902, after the decree had been granted, but before the time to intervene therein and have the default opened had expired, plaintiff herein, through his attorney, procured a copy of the decree of divorce and of the record upon which it was founded from the Virginia court. Thereafter he requested from this defendant the return of certain jewelry he had theretofore given her. During all of this time plaintiff had failed to provide in any way for defendant or their children. In February, 1906, more than four years after the granting of the decree, defendant married in the state of Virginia. In April, 1906, plaintiff herein, who in the intervening time had remained quiescent with respect to said divorce proceedings, commenced this action for the ostensible purpose of having his matrimonial status determined. The sole question to be now determined is the force and effect, if any, to be given to the Virginia decree by the courts of this state.

The action being brought upon the ground of defendant's adultery with the person recognized as her present husband in Virginia, it must fail unless, under the laws of New York, the latter is not lawfully her husband, but the former marital relationship still subsists. The first question is, whether the Virginia court acquired jurisdiction of the action in divorce. As to the defendant herein (plaintiff in that action) I am of the opinion that it did. While the domicile of the wife is for general purposes determined by that of her husband, she may, by leaving him for just cause, acquire a residence in another state, in which she may maintain an action for divorce. 14 Cyc. 584. I am satisfied in this case that defendant herein did acquire a bona fide residence in Virginia, and that she had just cause for leaving her husband. But unfortunately jurisdiction was never acquired over the defendant in

Virginia. He was never a resident of that state and never was served with process therein, nor did he ever voluntarily appear in the action there. While he had himself suggested a legal separation, and been the guilty cause of the actual separation, and while he knew of the granting of the decree and took occasion of the knowledge to demand back certain presents he had made his wife, yet I find no way of determining upon the authorities that the Virginia decree is binding upon him in this state. Although this state recognizes and enforces the jurisdiction it obtains against nonresidents by the publication of a summons, it does not admit the validity of a judgment in a matrimonial action obtained against one of its citizens in another state, where there was only publication of process and no personal service or voluntary appearance. There has been no legislative adjustment of this anomalous situation, which has been emphasized by repeated decisions. People v. Baker, 76 N. Y. 78, 32 Am. Rep. 274; O'Dea v. O'Dea, 101 N. Y. 29, 4 N. E. 110; Cross v. Cross, 108 N. Y. 628, 15 N. E. 333; Baillie v. Baillie, 30 App. Div. 461, 52 N. Y. Supp. 228; Bell v. Bell, 157 N. Y. 719, 53 N. E. 1123; Lynde v. Lynde, 162 N. Y. 411, 56 N. E. 979, 48 L. R. A. 679, 76 Am. St. Rep. 332; Winston v. Winston, 165 N. Y. 553, 59 N. E. 273.

In the recent case of Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867; Mr. Justice White, in delivering the opinion of the United States Supreme Court, enunciated, among others, the following propositions: (1) Where a personal judgment has been rendered in the courts of a state against a nonresident merely upon constructive service, and therefore without acquiring jurisdiction over the person of the defendant, such judgment may not be enforced in another state in virtue of the full faith and credit clause of the Constitution. Indeed, a personal judgment so rendered is, by operation of the due process clause of the fourteenth amendment, void as against the nonresident, even in the state where rendered, and therefore, such nonresident in virtue of rights granted by the Constitution of the United States, may successfully resist, even in the state where rendered, the enforcement of such a judgment. And the court cited, with approval, the language of the court in Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, as follows:

"Process from the tribunals of one state cannot run into another state and summon parties there domiciled to leave its territory and respond to proceedings against them. Publication of process or notice within the state where the tribunal sits cannot create any greater obligation upon the nonresident to appear. Process sent to him out of the state and process published within it are equally unavailing in proceedings to establish his personal liability."

(2) This general rule, applicable to judgments in personam, is limited by the inherent power which all governments must possess over the marriage relation and its dissolution as regards their own citizens, in so far as it is viewed as a civil contract. From this exception it results that where the court of one state, conformably to the laws of such state, or the state through its legislative department, has acted concerning the dissolution of the marriage tie as to a citizen of that state, such action is binding in that state as to such citizen, and the validity of the judgment may not therein be questioned on the ground that the action of the state in dealing with its own citizens con-

cerning the marriage relation was repugnant to the due process clause of the Constitution. Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654. And as a corollary of the recognized power of a government thus to deal with its own citizen by a decree which would be operative within its own borders, irrespective of any extraterritorial efficacy, it follows that the right of another sovereignty exists to give to a decree so rendered such efficacy as to that government may seem to be justified by its conceptions of duty and public policy.

(3) Even if a matrimonial action be regarded as a proceeding in rem, it is divisible, and where there are separate domiciles there are separate jurisdictions.

(4) Where a defendant is not individually domiciled in a state, and does not appear in the divorce cause, and is only constructively served with notice of the pendency of the action, the court acquires no jurisdiction. Or, as the proposition was stated in Jones v. Jones, 108 N. Y. 415, 15 N. E. 707, 2 Am. St. Rep. 440:

"The contract of marriage cannot be annulled by judicial sanction, any more than any other contract inter partes, without jurisdiction of the person of the defendant. The marriage relation is not a res within the state of the party invoking the jurisdiction of a court to dissolve it, so as to authorize the court to bind the absent party, a citizen of another jurisdiction, by substituted service or actual notice of the proceeding given without the jurisdiction of the court where the proceeding is pending."

(5) The court, in the Haddock Case, recognizes this as the settled policy of this state and proceeds to say:

"That the principle referred to is still enforced by the New York court is shown by recent cases, viz., Lynde v. Lynde, 162 N. Y. 405, 56 N. E. 979, 48 L. R. A. 679, 76 Am. St. Rep. 332; Winston v. Winston, 165 N. Y. 553, 59 N. E. 273, and the case at bar. And it is indubitable that under this doctrine the courts of New York have invariably refused, as they have done in the case at bar, to treat a divorce rendered in another state under the circumstances stated as entitled to be enforced in New York by virtue of the full faith and credit clause of the Constitution of the United States, and, indeed, have refused generally to give effect to such decrees even by state comity."

In its conclusion the court held that, while the foreign decree was enforceable within the borders of the state granting it, and while this state could give to it within its borders and as to its own citizens such efficacy as it might be entitled to in view of its public policy, yet the foreign decree was not entitled to obligatory enforcement in this state.

In view of the uniform trend of decisions in this state, therefore, the Virginia decree is of no force or effect against plaintiff herein, and he is entitled to judgment. Unless the parties can agree upon some arrangement with respect to the custody of the children which is mutually satisfactory they will remain with their mother, the defendant herein, who has cared for them since her separation from plaintiff, and who is blameless for the situation which has arisen.