JAMES F. WEIR, Plaintiff, *v.* MARTHA L. WEIR, Defendant.

Supreme Court, Onondaga County, December 24, 1927.

**Husband and wife — divorce — foreign decree of divorce on constructive service not defense — foreign court did not have jurisdiction of marriage domicile of parties — separation agreement does not alter situation.**

In an action for divorce a decree of divorce granted to the defendant herein upon constructive service of process only, by a foreign State, which had neither actual nor constructive jurisdiction of the marriage domicile of the parties, is not binding upon the plaintiff in this action, resident in the State, and, therefore, is not a defense to the charge of adultery, the defendant herein having remarried in this State. The fact that the parties had entered into a separation agreement prior to the foreign decree does not alter the situation.

ACTION for absolute divorce.

*Gerson Rubenstein,* for the plaintiff.

*Costello, Cooney & Fearon [Henry E. Wilson* of counsel], for the defendant.

WILLIAM F. DOWLING, J. The parties herein were married at Syracuse, N. Y., May 21, 1923. The following September they separated. After the separation of the parties in September, 1923, the defendant instituted an action in Onondaga county, N. Y., for a separation against the plaintiff on the ground of cruel and inhuman treatment. Issue was joined by the defendant therein. Before said action was reached for trial, the parties entered into a separation agreement wherein they agreed to settle and discontinue said action, and thereafter to live separate and apart, releasing each other from support, maintenance, work or service of any kind. It was also agreed that the defendant herein might reside wherever she chose. Defendant, however, was to support and maintain herself, freeing the plaintiff from any obligation on account thereof. Paragraph 6 of said separation agreement was as follows: " It is further understood and agreed that if the parties hereto shall live in the same house or building after the signing of these agreements, that that fact shall not in any way affect the condition of this agreement. However, it is understood that this agreement being an agreement of separation, shall not in any way affect any divorce proceedings in case either party seeks to divorce the other."

On the 12th of February, 1924, the defendant took up her residence in Sandusky, O. Prior to going to Ohio, the defendant had been employed by the New York Telephone Company as an operator. Upon reaching Sandusky, she procured a similar position with a telephone company there. On February 23, 1925, defendant commenced an action in the Court of Common Pleas of Erie county, O., for a divorce, upon the ground of non-support and cruel and inhuman treatment. Service of summons in that action was made upon the plaintiff herein by publication and by mailing a copy of the summons and petition, as prescribed by section 11984 of the General Code of Ohio. He did not appear in said action, either personally or by attorney, and in due course judgment by default for a decree of divorce was entered against him on the 9th of April, 1925, in the Court of Common Pleas of Erie county. On January 1, 1926, the defendant was married to a Mr. Ray Marvin at Syracuse, N. Y., and they have lived and cohabited there as husband and wife since then. On the 28th of January, 1926, the plaintiff instituted this action against the defendant for

an absolute divorce on the ground of adultery arising out of the marriage of the defendant and said Marvin at Syracuse, N. Y., since January 1, 1926. The defendant interposed an answer on the 27th of February, 1926, denying the allegations of adultery on her part, setting up as a separate defense the Ohio divorce obtained by her, claiming that she was a *bona fide* resident of the State of Ohio at the time, and that the plaintiff, by a letter written to her at Sandusky on April 2, 1925, the contents of which letter were as follows:

" 1201 Oak St.,
" Syracuse, N. Y.,
" Apr. 2, 1925.

" MARTHA —

" Why all this prattle about you wanting to obtain a divorce from me?

" Go ahead and get your divorce, I won't bother you.

" JIMMIE."

appeared in the action and consented to the entry of a decree of divorce against him, and that said letter constituted a valid appearance in the action, and in addition claiming that by virtue of her residence in the State of Ohio the decree of divorce granted her therein is binding upon the plaintiff, and that the courts of the State of New York should give it full faith and credit.

It is the claim of the defendant here that by virtue of the separation agreement of December 19, 1923, the matrimonial domicile of the plaintiff and the defendant in New York State no longer obtained; that upon the execution of said agreement, she had a right to establish her separate domicile wherever she chose, and that having established it in the State of Ohio, in accordance with the laws of Ohio, the divorce obtained by her after establishing her Ohio domicile is a valid divorce in the State of Ohio and everywhere else.

The plaintiff contends on the other hand that defendant went to Ohio for the sole and exclusive purpose of procuring a divorce, and without any intention upon her part of establishing a valid domicile and becoming a citizen of said State; that insomuch as the summons in the Ohio action was not served upon him within the border of that State, or that he did not appear either in person or by attorney, or file an answer in said action, the courts of Ohio acquired no jurisdiction over him, and that the decree of divorce procured in said action is of no effect here, and that it is no defense to the action instituted herein.

The journal entry in the Court of Common Pleas in said divorce case, of April 9, 1925, is as follows:

" IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, OHIO

January, Term, A. D. 1925.        April 9th, 1925.

Martha L. Weier,
         Plaintiff

No. 15882

       vs                   Civil Action

James F. Weier,              Journal Entry.

          Defendant.

" This 9th day of April, 1925, this cause came on to be heard on the petition and the evidence, the defendant being in default of demurrer, motion or answer, although duly served with process by publication, proof of publication of the pendency and prayer of the petition herein is made, and the court finding said publication and proof in all respects regular and according to law do hereby approve same.

" The court further find that the plaintiff was a *bona fide* and actual resident of the State of Ohio, county of Erie for more than a year next preceding the filing of her petition herein, and that the parties were married as in said petition set forth.

" The court further find, upon the evidence adduced, that the defendant has been guilty of extreme cruelty and gross neglect of duty toward her, and by reason thereof she is entitled to a divorce as prayed for.

" It is therefore ordered, adjudged and decreed that the marriage contract heretofore existing between the said Martha L. Weier and James F. Weier be, and the same is dissolved and both parties are released therefrom.

" It is further ordered that plaintiff pay the costs of this proceeding, and that she be restored to her former maiden name of Martha L. Phinney.         WM. S. FIESINGER

                                      " *Judge.*"

No reference is made in said journal entry to the said letter of April 2, 1925, as constituting an appearance in said action or a consent to the entry of judgment. Said journal entry recites that the defendant in said action, the plaintiff herein, was in default of demurrer, motion or answer although duly served with process by publication. That the plaintiff herein appeared in said action or consented to the entry of said decree against him by reason of said letter of April 2, 1925, is an afterthought upon the part of the defendant. Said letter and envelope were marked Exhibits 2 and 3 respectively and received in evidence in this action. They show no mark of having been offered or received in evidence in the Ohio action, and were not before the court therein for con-

sideration. It must, therefore, be held that said letter did not constitute an appearance in said action or a consent to the entry of a decree of divorce against the defendant therein. The inference is irresistible that the defendant's residence in Ohio was acquired for the sole purpose of obtaining a divorce. She left Syracuse on the 12th of February, 1924, for Sandusky. On the 23d of February, 1925, she instituted said Ohio action for a divorce, without any collusion with the plaintiff herein. In view of said separation agreement, plaintiff had a right to select her domicile for any reason that seemed good to her. The motive of a change of domicile has a bearing only when there is an issue open on the intent. The very meaning of " domicile " is technically pre-eminent head-quarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined. In *Williamson* v. *Osenton* (232 U. S. 619) the court said (at p. 625): " The only reason that could be offered for not recognizing the fact of the plaintiff's actual change, if justified, is the now vanishing fiction of identity of person. But if that fiction does not prevail over the fact in the relation for which the fiction was created there is no reason in the world why it should be given effect in any other. However it may be in England, that in this country a wife in the plaintiff's circumstances may get a different domicil from that of her husband for purposes of divorce is not disputed and is not open to dispute. *Haddock* v. *Haddock*, 201 U. S. 562, 571, 572. This she may do without neces-sity and simply from choice, as the cases show, and the change that is good as against her husband ought to be good as against all. In the later decisions the right to change and the effect of the change are laid down in absolute terms. *Gordon* v. *Yost*, 140 Fed. Rep. 79; *Watertown* v. *Greaves*, 112 Fed. Rep. 183; *Shute* v. *Sargent*, 67 N. H. 305; *Buchholz* v. *Buchholz*, [63 Wash. 213]; 115 Pac. Rep. 88. See *Haddock* v. *Haddock, supra; Barber* v. *Barber*, 21 How. [U. S.] 582, 588, 597, 598. We see no reason why the wife who justifiably has left her husband should not have the same choice of domicil for an action for damages that she has against her husband for a divorce."

In view of the Ohio decree of divorce, it must be held that the plaintiff here was guilty of desertion of the defendant. Con-sequently, the defendant might maintain a domicile of her own. (*Dean* v. *Dean*, 241 N. Y. 240, 244.) It was altogether lawful and proper for the defendant to go to the State of Ohio, under the circumstances, for the purpose of procuring a divorce from the plaintiff herein. There was no intention upon her part to

2

do anything inimical to the laws of the State of New York. She returned to the State of New York, supposing and believing that she had procured a divorce in the State of Ohio, valid here, and in that belief, married as above stated. Under our statutes, adultery is the only ground recognized for an absolute divorce.

The plaintiff herein was never a resident of the State of Ohio. The parties to this action fixed their marriage domicile in the State of New York where it always remained. By going to Ohio, the defendant did not take with her the marriage domicile which had been fixed in New York, either actually or constructively. Consequently, the courts of Ohio never had jurisdiction of the marriage domicile of the parties. The plaintiff has always been an actual *bona fide* resident of the State of New York.

Under this state of the case, does the Ohio decree of divorce herein constitute a good defense to the charge of adultery contained in the complaint herein? I think it does not. If the matrimonial domicile of the parties had been in Ohio when the action there was begun, and the decree was granted, the courts of this State would be obliged to give it full force and credit, even though the defendant was not personally served with a summons in Ohio or did not appear in any way in the action, he being served only by publication through the mail. (*Atherton* v. *Atherton*, 181 U. S. 155.) The fact that the parties had entered into a separation agreement does not alter the situation. The Court of Common Pleas of Ohio, having never had jurisdiction of the domicile of the marriage herein, its decree has no binding effect upon the courts of this State. The domicile of the plaintiff in that action alone is not sufficient to render the decree binding here. (*People* v. *Baker*, 76 N. Y. 78, 84; *O'Dea* v. *O'Dea*, 101 id. 23; *Winston* v. *Winston*, 165 id. 553, 555; *Ransom* v. *Ransom*, 54 Misc. 410; affd., 125 App. Div. 915; *Callahan* v. *Callahan*, 65 Misc. 172; *People ex rel. Catlin* v. *Catlin*, 69 id. 191; *Berney* v. *Adriance*, 157 App. Div. 628, 631; *Barber* v. *Barber*, 89 Misc. 519; *Rontey* v. *Rontey*, 101 id. 166, 170; *Gilson* v. *Airy*, 181 App. Div. 761; *Ball* v. *Cross*, 231 N. Y. 329, 331.) In the *Ransom Case* (*supra*) the court said (at p. 412): "The sole question to be now determined is the force and effect, if any, to be given to the Virginia decree by the courts of this State. The action being brought upon the ground of defendant's adultery with the person recognized as her present husband in Virginia, it must fail unless, under the laws of New York, the latter is not lawfully her husband, but the former marital relationship still subsists. The first question is, whether the Virginia court acquired jurisdiction of the action in divorce. As to the defendant herein (plaintiff in that action) I am of the opinion that it did. While the

domicile of the wife is for general purposes determined by that of her husband, she may, by leaving him for just cause, acquire a residence in another State, in which she may maintain an action for divorce. (14 Cyc. 584.) I am satisfied in this case that defendant herein did acquire a *bona fide* residence in Virginia, and that she had just cause for leaving her husband. But, unfortunately, jurisdiction was never acquired over the defendant in Virginia. He was never a resident of that State and never was served with process therein, nor did he ever voluntarily appear in the action there. While he had himself suggested a legal separation, and been the guilty cause of the actual separation, and while he knew of the granting of the decree and took occasion of the knowledge to demand back certain presents he had made his wife, yet I find no way of determining upon the authorities that the Virginia decree is binding upon him in this State. Although this State recognizes and enforces the jurisdiction it obtains against non-residents by the publication of a summons, it does not admit the validity of a judgment in a matrimonial action obtained against one of its citizens in another State where there was only publication of process and no personal service or voluntary appearance. There has been no legislative adjustment of this anomalous situation, which has been emphasized by repeated decisions."

In the *Rontey Case* (*supra*) the court said (at p. 170): "The decisions of the United States Supreme Court establish the principle that a decree rendered by a court of the matrimonial domicile upon constructive service is binding on the defendant therein, but that a decree rendered upon like service by a court of the husband's domicile, acquired after deserting his wife, is without jurisdiction. It does not follow, conversely, that if a husband be justified in separating from his wife he may leave her and acquire a new domicile which will become the constructive domicile of the wife as well, or a new matrimonial domicile. On the contrary, I am of opinion that a matrimonial domicile is the place where the parties live together as husband and wife, either actually or constructively. Such a matrimonial domicile continues until a new one is acquired. It cannot be acquired, even constructively, by a separation by one party from the other with the clear and avowed intention to sever matrimonial relations, even though justified."

In the cases of *Dean* v. *Dean* (241 N. Y. 240) and *Winston* v. *Winston* (165 id. 553) the Court of Appeals referred to but did not pass upon the question as to what attitude the courts of this State would adopt in a case where a decree of divorce was obtained in a foreign State where the husband and wife were living separate and apart by consent, so that the question has never been definitely

determined by the Court of Appeals of this State, but the trend of judicial decisions seems to clearly indicate that the courts of this State will not give effect to a decree of divorce of a foreign State which did not have jurisdiction of the matrimonial domicile of the parties at the time it was granted.

The cases of *North* v. *North* (47 Misc. 180) and *Kaufman* v. *Kaufman* (177 App. Div. 162) are distinguishable from the cases above cited. In the *North Case* (*supra*) the parties were domiciled in New York. The wife voluntarily and without cause separated from her husband. The husband gave up his domicile in New York and went to California, where he intended to and did establish a domicile, and after three years he instituted an action there for a divorce on the ground of desertion. The summons was served upon the wife in New York by publication. She did not appear in the divorce proceedings in California, directly or indirectly. He procured a decree of divorce against her, and three years thereafter returned to the State of New York. She brought an action against him in this State for support. Judge GAYNOR, before whom the case was tried, held that the California decree of divorce was valid, and that it had full extra-territorial effect, although the wife was not personally served with the summons, and did not appear in the action, basing his decision upon the ground that she had abandoned him in New York and had destroyed the matrimonial domicile. That decision is in conflict with the prevailing opinion in the *Atherton Case* (*supra*). The decision is a forced one in order to deny to the plaintiff, who had voluntarily and without cause deserted her husband, any equitable relief.

In the *Kaufman Case* (*supra*) action was brought to annul the marriage on the ground that the defendant had a former husband living at the time it was contracted. The plaintiff persuaded and induced the defendant to obtain a divorce from her first husband, and supplied the necessary funds to enable her to go to and remain in Nevada for such purpose, and was fully aware of all the material facts with respect thereto, and he advised and assured her that the divorce so obtained would be valid everywhere. The court held that the plaintiff was not in a position to contend that the Nevada divorce was void for want of jurisdiction, because procured only by constructive service of process, because it was at his instance that the Nevada decree of divorce was obtained, and that the defendant had married him in good faith; that to permit him to invoke the rule that a decree granted on constructive service of process only was not binding upon a defendant resident of New York, would be to enable him to perpetrate an outrage against society as well as an injustice on the defendant. Except in instances

like the *North* and *Kaufman Cases (supra)* the courts of this State have uniformly adhered, in matrimonial cases, to the rule that a decree of divorce granted upon constructive service of process only, by a foreign State, which had neither actual nor constructive jurisdiction of the marriage domicile of the parties, is not binding upon the spouse resident in the State of New York.

From the separation agreement, it is inferable that both parties were to blame for the separation. Therefore, the defendant is not entitled to any special consideration on the theory that she was the innocent party. Just why paragraph 6 of the separation agreement was inserted is not clear. I think it was the intention of the parties as therein expressed to continue their marriage domicile in New York State and to attempt to relieve themselves from a possible charge of forgiveness of past offenses or condonation of future transgression.

The defendant, having failed to bring herself within the rule of the *Atherton* and other cases first above cited, has failed to establish her defense. Plaintiff is, therefore, entitled to judgment of divorce against the defendant, as demanded in the complaint.

Findings and judgment accordingly, without costs.