## FRENCH v. FRENCH.

(Supreme Court, Equity Term, Niagara County. December 7, 1911.)

1. DIVORCE (§ 326*)—FOREIGN JUDGMENTS—CONCLUSIVENESS.

Where a foreign court had jurisdiction of the subject-matter of an action for divorce and of the parties, the courts of New York will give full faith and credit to the decree of divorce rendered.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 827–830; Dec. Dig. § 326.*]

2. DIVORCE (§ 326*)—FOREIGN JUDGMENTS—CONCLUSIVENESS.

Where the court of a sister state had jurisdiction of the subject-matter of an action for divorce and of the wife instituting the action, based on her testimony as to her residence in the state, and the summons and complaint were personally served on defendant in another state, and he appeared and participated to the extent of stipulating the amount of alimony to be allowed, the wife could not attack the decree obtained by her in a sister state in an action in which she is not a party, but she must abide by the decree, unless she attacks it before the court of the sister state.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 827–830; Dec. Dig. § 326.*]

3. MARRIAGE (§ 58*)—SUIT TO ANNUL—EQUITABLE JURISDICTION.

An action by a wife to annul her marriage on the ground that the husband had a wife living at the time of the marriage is a suit in equity, governed by the principles of equity; and, where the wife knew of her husband's former marriage and of his former wife obtaining a divorce in a sister state, the court will refuse to annul the marriage, especially where it is necessary to maintain the validity of the marriage for the protection of children.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 115–123; Dec. Dig. § 58.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Elizabeth French against Benjamin F. French to annul a marriage. Complaint dismissed.

Moore & Killian (Morris Cohn, of counsel), for plaintiff.

Davies, Auerbach, Cornell & Barry (Andrew Macrery, of counsel), for defendant.

POOLEY, J. This is an action to have the marriage of the parties declared void on the ground that the defendant had a wife living at the time of the marriage of the parties hereto. The answer sets up a decree of divorce obtained by the former wife of the defendant against him in the state of South Dakota. The contention here is that the decree obtained in South Dakota was null and void, and the plaintiff asserts that it was entered without the court having had jurisdiction of the subject-matter. Evidence was presented on behalf of the plaintiff by the former wife of the defendant, which it is contended demonstrates that she, the plaintiff in that action, never became a bona fide resident in good faith of the state of South Dakota, and that, therefore, the court never acquired jurisdiction of the subject-matter of the action.

The defendant and his former wife, Susan B. French, were married in Massachusetts November 29, 1883, and lived together as man and wife from that time until 1897 in the state of Massachusetts practically continuously, and, evidently having disagreed in their marital relations, the wife went to South Dakota in May, 1899, and more than six months thereafter an action for divorce was instituted, in which she was plaintiff and her husband, this defendant, was defendant, praying for a divorce from him. The court in which that action was brought was a court of competent jurisdiction, the summons and complaint were served personally upon the defendant in the state of Massachusetts, and in due course application was made to the court in South Dakota for judgment; the defendant not having answered, but having generally appeared and entered into a written stipulation verified by him relative to the amount of alimony that should be allowed and awarded in the judgment. The complaint in the action in South Dakota was signed and verified by the former wife, and from the decree entered in that court it appears that the court having heard and considered the proofs, and having made and filed its decision in writing finding that the plaintiff was for more than six months prior to the commencement of the action a bona fide resident in good faith of the state of South Dakota, and having read and considered defendant's voluntary appearance and stipulation and waiver of notice of application for judgment, it was adjudged and decreed that the marriage between these parties be dissolved, and that each of them be free from the obligations thereof, and declaring it lawful for the said parties or either of them to marry again. It is a fair presumption that the plaintiff furnished the evidence upon which the decree was based, as the question of her being a bona fide resident in good faith of the state of South Dakota was matter of intention, and her evidence upon that subject would be the best, if not the only, evidence attainable. Eleven days after the granting of the decree in South Dakota the parties to the present action were married in the state of New York.

There is evidence that the plaintiff here was fully cognizant of the marital relations of the defendant and his former wife, and that she believed that the divorce had been procured which rendered her marriage to the defendant a legal possibility. This plaintiff resided at the same house with defendant and his former wife before the divorce action was brought, and it is manifest that the courtship of the parties to this action had been in progress for some time before the divorce action was instituted.

There was no issue of the first marriage, but the marriage now sought to be annulled has resulted in the birth of two daughters, now living: Elsie, born April 4, 1901, and Helen, born February 19, 1903. It is manifest that the three parties primarily interested were fully informed as to the conditions existing and which have existed from the time of the disagreement of this defendant and his former wife down to the present time. The decree of divorce was entered in February, 1900, providing for the payment of alimony, and it is fair to presume that that judgment has continued and that the terms thereof have been complied with, as nothing to the contrary appears.

The complaint herein verified by plaintiff alleged in paragraph 3:

"That the said marriage between plaintiff and defendant was contracted by said plaintiff in good faith and with the full belief on the part of the plaintiff that the marriage between said defendant and said Susan B. French had been lawfully dissolved."

This of necessity presupposes the knowledge on the part of the plaintiff of the former marital relations of the defendant and Susan B. French, and of the fact that the decree of divorce had been obtained, and that the marital relations between them had been dissolved. The fact of the marriage of the parties hereto within 11 days after the entry of this decree, with the knowledge of this plaintiff that the decree had been so recently entered, is some evidence that the marriage in question was quite as desirable on the part of this plaintiff as on that of the defendant. There is no allegation of fraud of any of the parties in the transaction, and the marriage of the parties hereto would seem to have been a consummation, if not agreeable to all, at least to the knowledge of the three parties interested.

The parties to this action continued living together for a number of years, and, however desirable the relation was at the time of their marriage, they become estranged, and the plaintiff now brings this action to get rid of the relation and seeks a judgment which would necessitate a finding that the decree of the South Dakota court was null and void. We start with a decree of the Dakota court, valid on its face. The only proof given by the plaintiff in attacking this decree is that presented by the testimony of Susan B. French, the former wife of the defendant. She undertakes to give in detail her movements from the time she left Massachusetts until the decree was obtained, and she has given testimony in effect directly opposite to that which she gave before the court in South Dakota, as evidenced by the findings of that court; but her testimony is not at all satisfactory even upon this branch of the case. It is not the whole truth, if truthful in part, because upon cross-examination she testified that she wished she could tell the truth in reference to the transaction, but refused

to testify, as she stated, under advice of counsel. The decree of a court of a sister state may not be lightly questioned by testimony such as is presented in this case, even if the testimony is admissible at all.

It is urged by the plaintiff that the action in South Dakota was instituted through the procurement of the defendant, without the knowledge of Susan B. French, and carried to judgment without her knowledge. I cannot agree with this contention. On the one hand, we have the decree of a court of competent jurisdiction in South Dakota, the recitals of which show exactly the opposite of this contention. These findings are based upon a verified complaint, and evidence presented by the former wife of Susan B. French in 1900. On the other hand are the statements made at this time by this same Susan B. French in many respects diametrically opposed to her former statements after the passing of 11 years, and confessedly not the whole truth, and in an action in which she is not a party. She is thus attempting to render null and void at this distance of time a decree which to all appearances was entirely satisfactory to her and obtained by evidence tendered by her. This presents a question of fact as to which statement is to be accepted. If the testimony is of such a character that we are called upon to reject one part as against another, the statements now made should be rejected rather than those made at the time the decree was entered, and which formed a basis for such decree.

Again, it is urged by the plaintiff as an alternative proposition that the former wife was induced by the defendant to go to South Dakota for the sole purpose and with the intention of procuring the decree. It appears that he paid her expenses, and that he paid the expenses of the suit in South Dakota. This statement, if true, does not necessarily affect the validity of the decree, so far as this court is concerned. It may well be understood that these parties having disagreed without hope of a restoration of their former relations and without a charge of infidelity or other statutory grounds which it would be necessary to establish in the state of Massachusetts, the wife might go to another state for the purpose of establishing her residence there preparatory to obtaining a divorce in that state, and that the husband might continue to furnish her means of support and pay her legal expenses without this court being called upon to pass upon a charge of collusion, which might be available in the South Dakota court in attacking the original judgment of divorce. She might have gone to Dakota for her health, and, after arriving there, have determined to obtain a divorce. She certainly did obtain it by tendering proof which satisfied that court. At all events, none of the parties were injured, the former Mrs. French procuring the divorce which she desired; her husband was content to have the divorce obtained, and to have a decree charging him with the payment of alimony; and the present Mrs. French, knowing of the former conditions and believing that Mr. French had been divorced, apparently obtained what she wanted when she married him 11 days after the entry of the decree. Now, having lived with him for ten years and having gotten tired of her bargain, it seems to me that the facts and circumstances before

this court do not make out a case to undo what has been done by these parties, especially in view of the fact of the two children living, the issue of the present marriage. That judgment, under the circumstances, must stand as valid until set aside by the court which rendered it.

[1] It is the well-settled law of this state that a foreign court having jurisdiction of the subject-matter in an action for divorce and also jurisdiction of the parties, the courts of this state will give full faith and credit to a decree of divorce rendered.

[2] The court in South Dakota had jurisdiction of the subject-matter, and from its findings it was made to appear satisfactorily to that court that it had jurisdiction of the plaintiff. The summons and complaint were personally served upon the defendant in the state of Massachusetts, and he appeared and participated in the proceedings to the extent of stipulating the amount of alimony which was to be allowed.

I have not overlooked the case of Andrews v. Andrews, 188 U. S. 14, 23 Sup. Ct. 237, 47 L. Ed. 366, which holds that jurisdiction over the subject-matter depends upon domicile, and without such domicile there is no authority to decree a divorce. The decree entered in the court in South Dakota recites the fact that from the proofs adduced the court became satisfied that the plaintiff had established her domicile in that state. Nor have I overlooked the further proposition in that case that the principle dominating the subject is that the marriage relation is so interwoven with public policy that the consent of the parties is impotent to dissolve it, contrary to the law of domicile. The appearance of the defendant in the South Dakota case was not for the purpose of conferring jurisdiction, but was for the purpose of fixing the amount of the alimony; but it is positive proof of the fact that the defendant knew that the action was pending for the purpose of obtaining a divorce from him. I find nothing in the record from which it can be urged that the South Dakota court acted otherwise than in accord with the legal rights of the parties.

In the recent case of Hall v. Hall, 139 App. Div. 120, 123 N. Y. Supp. 1056, the questions here involved are very ably considered. The plaintiff and defendant were married at Cheyenne, Wyo., October 5, 1908. The action was brought to annul the marriage on the ground that on April 8, 1906, at White River City, Colo., the defendant married one Howell Jones, who is still living, and that a decree of divorce claimed to have been obtained by her from Jones in September, 1908, in Jefferson county, Colo., was obtained on constructive service of the summons by publication without personal service; that Jones did not appear or answer, and judgment was taken against him by default; that the decree of divorce was void on the ground that the court did not obtain jurisdiction of the defendant; and that, therefore, the marriage remains in full force and effect. The court holds that the plaintiff who claims that his marriage was void had the burden of showing, not only that Jones was alive, but that the divorce was void. The answer put in issue these allegations of the complaint. The court at Special Term found that the divorce in Colorado was

duly granted, but found that the defendant practiced gross fraud upon the court of Colorado by stating in a verified application for an order of service by publication that she had no definite information with regard to the change of residence of the husband. The county court of Jefferson county, Colo., was a court of competent jurisdiction.

Justice Laughlin has so well stated several propositions involved here that I quote him at length:

"There can be no question but that the court in Colorado had jurisdiction both over the subject-matter of the action and over the parties, and, as has been seen, the trial court herein has so found. It is our duty, therefore, to give the decree full faith and credit. Atherton v. Atherton, 181 U. S. 155 [21 Sup. Ct. 544, 45 L. Ed. 794]; Harding v. Harding, 198 U. S. 317 [25 Sup. Ct. 679, 49 L. Ed. 1066]; Haddock v. Haddock, 201 U. S. 562 [26 Sup. Ct. 525, 50 L. Ed. 867]. * * * Section 2115 of the Revised Statutes of Colorado required that the court or judge examine the plaintiff on the application with respect to her knowledge concerning the whereabouts of her husband. The presumption is that this duty was performed, and the reasonable inference from the recitals in the order is to the same effect. * * * It is well settled that a judgment rendered in our own or a sister state or in a foreign country may be attacked collaterally for want of jurisdiction, or for fraud perpetrated upon the court, or upon one of the parties to the action; and Folger, J., in writing for the court in Hunt v. Hunt, 72 N. Y. 217, 227 [28 Am. Rep. 129], states the rule with respect to the nature of a fraud as follows: 'But the fraud in such case is made up of the same constituents as is fraud in any other case, and the same state of facts must appear which is required in other cases. There must be fraudulent statements and representations designed and intended to mislead with knowledge of falsity and resulting in damaging deception.' So far as Jones is concerned, it does not appear but that he had full and timely knowledge of the pendency of the divorce action, and therefore there is not a scintilla of evidence that any fraud was prepetrated upon him or that he was deceived. Nor is there any evidence that a fraud with respect to the validity of the divorce was perpetrated on the plaintiff herein. Moreover, a stranger to a judgment can only impeach a judgment collaterally for fraud when it injuriously affects him. * * * Here the plaintiff and defendant both resided in Colorado, and they first met there. At that time plaintiff knew that defendant was married. No fraud was committed against him. He wanted to marry her, and to authorize it was necessary that she obtain a divorce. He understood that she obtained it. The divorce may be voidable, but is not void for her fraud, nor could she avoid it on that ground. Her former husband, if living, may avoid it for her fraud, but he had not done so. If it should be duly annulled, the plaintiff may then be in a position to maintain an action to annul his marriage to the defendant, but he has no standing to avoid it for fraud, because he is not injuriously affected by it; but, on the contrary, by virtue of it he got just what he then wanted. Ruger v. Heckel, 21 Hun, 489, affirmed 85 N. Y. 483; Kinnier v. Kinnier, 45 N. Y. 535 [6 Am. Rep. 132]."

Applying these statements of the law to the present case, the former wife of the defendant cannot be heard to attack the decree obtained by her in South Dakota. Having invoked the jurisdiction of the Dakota court, she must abide by its decree, unless she sees fit to attack it before the tribunal which granted it. Here the attitude of the former Mrs. French is not that of a party to an action, but that of a witness in an action in which she is not a party, and, moreover, a reluctant witness, who has refused to tell the whole truth regarding the South Dakota action. To bring her within the doctrine of Bell v. Bell, 181 U. S. 175, 21 Sup. Ct. 551, 45 L. Ed. 804, and kindred cases, she would have to appear as defendant in an action by her husband;

but then she would have to take the position that her Dakota decree was valid. In Bell v. Bell the defendant had obtained a divorce in Pennsylvania by default, and this divorce was offered as a defense to the wife's action in this state. She gave proof in her action that her husband was a resident of New York state, and he offered no evidence that he had changed his domicile from New York to Pennsylvania. The court, of course, held:

"Upon this record therefore, the court in Pennsylvania had no jurisdiction of the husband's suit."

Both actions were between the same parties.

I know of no reason that will permit a party who has obtained in one state a decree of divorce, valid on its face, to attack it in another state in an action in which she is not a party. If wrongfully obtained, it would be permitting a party to take advantage of her own wrong.

[3] This case is brought in the equity side of the court, and the fundamental principles of equity must be applied, and the innocent protected. The full faith and credit provision of the Constitution must be upheld, and well-settled rules of law and public policy cannot be overridden to suit the changing notions of litigants invoking the aid of the courts.

Another reason, and perhaps, in its consequences, the most important, for denying the claims of the plaintiff, is found in the status of the two children. Here, again, equity demands that the court should protect the innocent. They are the wards of the court, and regardless of the claims of either or both parties to this action, or in the absence of any, the court must see to it that they suffer no wrong. It would require evidence of a very strong character to warrant a decree which might jeopardize their rights or injuriously affect their status. There is no such evidence in my judgment.

Counsel on both sides are to be commended for the very able and exhaustive briefs presented, which cover every possible phase of the subject. After a careful examination of them and the authorities cited, I have come to the conclusion that justice demands a dismissal of the complaint.