## VOLUME 93,

AND

# New York State Reporter,

## VOLUME 127.

---

(103 App. Div. 437.)

### HAMMOND v. HAMMOND.

(Supreme. Court, Appellate Division, First Department. April 14, 1905.)

1. DOMICILE—EVIDENCE.

Where one bought a farm in Vermont, and lived there for five years with his family, voted there, and was for a year a town official, qualification for which required a year's actual residence, Vermont was the state of his domicile, though he worked in New York, and spent a portion of his time there.

2. DIVORCE—PROCEEDINGS IN ANOTHER STATE—EFFECT—CREDIT.

Where a wife left the matrimonial domicile, in Vermont, and took up her residence in New York, with no intention of returning to Vermont, and the husband sued for divorce in Vermont, service of process being had by publication pursuant to the laws of Vermont, the decree of divorce was entitled to full faith and credit in New York, under the federal Constitution.

Appeal from Special Term.

Suit for separation by Mary A. Hammond against Charles L. Hammond. Appeal by defendant from a judgment granting a separation, awarding the custody of three minor children to the plaintiff, one minor child to the defendant, and awarding the plaintiff alimony. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Conrad Saxe Keyes, for appellant.
Geo. W. Gibbons, for respondent.

93 N.Y.S.—1

INGRAHAM, J. The action is for a separation. The defendant admits the marriage, and denies the other allegation of the complaint, and, as a separate defense, alleges that the plaintiff and the defendant resided for upwards of five years, prior to June, 1902, at the town of Orwell, in the state of Vermont, and that the defendant is still a resident of the said town and state, and that on the 11th day of June, 1903, by a decree of the County Court of Addison county, of the state of Vermont, to which court jurisdiction appertained, the defendant was duly and legally divorced from the plaintiff, and it was then there adjudged that the plaintiff and the defendant therein were no longer husband and wife, and that the defendant should be free to contract matrimony with whomsoever he willeth. Upon the trial at Special Term the court directed judgment for a separation, and awarded the custody of the children to the plaintiff, providing alimony for the support of the plaintiff and the children, and the defendant appeals. The only question upon this appeal is as to the validity of the Vermont divorce.

The plaintiff testified that the defendant bought a farm in Vermont in the year 1896; that she lived there with her children from May, 1896, to May, 1901, when she left to come to New York; that when the defendant first went to Vermont he lived there for about eight months, and that he came there several times during the year 1896; that he also came there several times in 1897; that in 1898 he was there for eight months, off and on; that in 1899 he came there occasionally, but was away for three or four months; that in 1900 he was there about the same time; that while she was there she received for her support money from the proceeds of the products of the farm, and also purchased what was necessary from a store; that she came to New York without the consent of the defendant, and he came to meet the plaintiff at the depot to send her back to Vermont; that after she returned to New York she hired the flat in West Fourth street, and moved there; that the defendant gave her son $5 to pay on account of the rent of that apartment; that since that time the defendant sent money to his son, and he paid the rent; that while there she carried on the farm owned by her husband; that with the proceeds from the dairy on the farm she clothed the children and herself, and paid the bills; that she ran the dairy, and took all the money that came in. There was further evidence that the defendant lived at a boarding house in New York various times within these five years; that on the 21st day of August, 1901, the defendant hired an apartment in the premises 224 West Fourth street; that the defendant never occupied those premises after he hired them, but the plaintiff and her children did; that the rent was subsequently paid by the children. After the plaintiff rested, the defendant testified that he was born in Addison county, Vt., and lived there until he was 21 years of age; that he then left Vermont, worked in various places, went to sea, and upon his return married the plaintiff, in Albany, in this state; that he then came to the city of New York, and lived there until 1894, and then went West; that he went to Orwell, Vt., in the latter part of the fall of 1895, and stayed there all of the winter

of 1895, and at that time he bought a farm, and moved his family there; that he stayed there until October, 1897, when he came back to New York, leaving the plaintiff and the children in Vermont, and commenced to work at his trade, working at a hotel for about a year, and then secured what he called a "traveling position," which took him to various cities, towns, and states through the country, in which position he continued during 1898 and 1899, returning to Vermont when he had an opportunity; that from the fall of 1895 to the present time he has actually lived on the farm, but that during a portion of the time he had a position in New York; that he paid taxes there, and paid a poll tax there, which made him a citizen; that he voted in Vermont every year from 1896 to and including 1903; that in the year 1900 he was one of the town auditors, elected at a town meeting; that the position which he took in New York allowed him the privilege of going to his home and his farm, returning there every five or six weeks; that. he has never given up his residence there; that in December, 1901, he mailed a letter to the plaintiff, addressed to "Mrs. C. L. Hammond, 224 West 4th Street, New York City"; that this letter stated that "I have brought suit against you for divorce in our County in Vermont and the case comes up for trial this December Term at Middlebury, Addison County, Vermont. The exact date of the trial I am unable to inform you. My object in writing you this letter is that I feel it my duty to notify you personally of the action I have taken"; that he received an answer to this letter from a Mr. Horan, a lawyer living in New York, and also a letter from his daughter; that, when the plaintiff left the farm in Vermont, she did not notify him in any way; that he first saw the plaintiff in the city of New York in the latter part of July or August, 1901; that he then asked the plaintiff to go back to Vermont, and she replied that she would never go there; that he never lived with her in New York after that time; that, when he went to see her at the house in Fourth street, he was not allowed in the house; that he talked to his children on the sidewalk, but was not allowed in the house. There was further evidence that the defendant had voted at the town meeting in November, 1900, and September, 1902, in the town of Orwell, Vt.; that, to entitle him to vote, it was necessary that he should be a resident of the town at least one year preceding the town meeting; that the defendant paid his poll tax for the years 1900, 1901, and 1902; that the defendant took possession of the farm in 1896; that the defendant offered to furnish the plaintiff a house at Orwell, where she could be near a school for the children; that she refused, and said she did not want any home in Vermont, and that when she left the farm she left it for good, and that she did not want any odds from the defendant, or his money, and she could take care of her children. Upon rebuttal the plaintiff admitted that she received a letter on December 2, 1902, from the defendant, in which he stated that he had made an application for a divorce in Middlebury, Vt.; that she consulted a lawyer about it, and the lawyer told her to ignore the letter entirely. There was also introduced in evidence an exemplified copy of a judgment

roll in a proceeding in the County Court of Addison county, in the state of Vermont. This consisted of a petition by the defendant, in which he asked for a decree of divorce from his wife, the plaintiff in this action. Annexed to that is a summons requiring the defendant in that action (the plaintiff in this) to appear before the County Court on the first Tuesday of June, 1902, then and there to answer the libel, and to show cause, if any she might have, why the prayer of said libel should not be granted. Annexed to that is an order reciting that it appearing that the defendant in that proceeding (the plaintiff in this action) was without the state of Vermont, so that the petition could not be served upon her, it was ordered that she be summoned to appear and answer the libel "on the first day of the next term of said court, to be held at Middlebury, within and for said county [Addison], on the first Tuesday of June, A. D. 1902, by the publication of the substance of said petition, together with this order, in the Middlebury Register, published at Middlebury, three weeks, successively, the last of which publications to be at least six weeks prior to said term of said court"; an affidavit of the foreman of the Middlebury Register Company, stating that the order of publication and substance of the petition in the case of Charles L. Hammond v. Mary Ann Hammond was printed and published in the Middlebury Register for three weeks, successively, to wit, as follows, February 28, 1902, March 7, 1902, and March 14, 1902, the last of which dates was six weeks preceding the June term of the County Court, 1902, as required by law; a decree of the County Court of said county, which recited that Charles L. Hammond, of Orwell, in the county of Addison and state of Vermont, filed in court his libel, praying·that the court would grant him a bill of divorce, and it being made to appear to the court that the permanent residence of said Charles L. had been within the°state for at least one year next previous to the filing of said libel in said court, and that the said Mary Ann had been legally notified to appear and show cause why the prayer of the said petitioner should not be granted, by the publication of the same and the order therefor in the Middlebury Register in accordance with law, "and the said Mary Ann comes not, and day thereof is given," etc., "from term to term until the term of said court to be held on the first Tuesday of June, A. D. 1903," and it appearing by legal and plenary evidence that the facts alleged in said petition are true, all of which being seen, and by the court fully understood, and due deliberation being thereupon had, "It is considered by the court here that the bonds of matrimony between the said Charles L. and the said Mary Ann be dissolved, and that the said Charles L. have a bill of divorce, and the court here do adjudge that the said Charles L. and the said Mary Ann. be no longer husband and wife, but twain, and that the said Charles L. be free to contract matrimony with whomsoever he willeth."

It thus appeared that the plaintiff and the defendant were residents of the state of Vermont for the five years from May, 1896, to May, 1901, when the plaintiff in this action left, without the consent of her husband, and returned to New York. The evidence is

also clear that the defendant in this action remained a resident of Vermont down to the time of the divorce proceedings in Vermont., It is true that he worked in the city of New York, and spent a portion of his time here, but his domicile was in Vermont. He made his application to the courts of that state for a divorce, and the notice to the plaintiff in this action to appear and answer was served according to the law of that state. She also had actual notice of the pendency of that proceeding. She consulted her lawyer, who advised her not to appear and to take no notice of it, and such proceedings were thereupon had that the court of the state of Vermont decreed a divorce. I think it clear that the court of Vermont had jurisdiction of the subject-matter of the action, which was the matrimonial status of the plaintiff and defendant, and that it acquired jurisdiction over the person of the plaintiff in this action by the publication of the notice to appear in the proceeding in Vermont, and that the courts of this state are bound, under the Constitution of the United States, to give full faith and credit to that judgment of the court of Vermont.

The refusal of the courts of this state to recognize judgments of divorce granted by other states has been much criticised. It has never, however, been held in this state that a judgment of a court of competent jurisdiction of the state of the matrimonial domicile of the parties to the action was not binding upon the parties, although at the time the action was commenced one of the parties had left the state. In Hunt v. Hunt, 72 N. Y. 218, 28 Am. Rep. 129, it was held that every state has the right to determine the status or domestic and social conditions of the persons domiciled within its territory; that every state may determine for itself for what cause that status may be changed or affected; that it may prescribe what legal proceedings shall be had to that end, and that all citizens of that state, domiciled within it and owing to it allegiance, are bound by the laws and regulations which it prescribes in that respect. On the question of the jurisdiction of the courts of the state of the matrimonial domicile, the court said:

"It is now to inquire whether the court in Louisiana had jurisdiction of the person of the parties to the judgment. That it had of the person of the defendant in this case may not be disputed. Louisiana was not only the state of his domicile, but of his actual residence and presence at the time. Jurisdiction of the person is got by the service of process upon the party personally within the territorial jurisdiction, or by his voluntary appearance in the suit. I think it may also be got of the defendant in a suit for divorce, when he is a domiciled citizen of the state in which the court has territorial jurisdiction, by such proceeding in the nature of service of process of the court as the law of that state has made the substitute and equivalent for service of process upon the person within the jurisdiction."

And after an exhaustive examination of the authorities the learned judge continued:

"I think that the result of the decisions of this state at this time is this: That, when courts of another state have jurisdiction of the subject-matter and of the person, they are to be credited collaterally; that jurisdiction of the subject-matter is to be tested by the powers conferred by the Constitution and Laws of the other state; and that, as to jurisdiction of the person, they go no farther against it than that, if the defendant is a domiciled citizen of

this state, jurisdiction of him by the courts of another state is not acquired, save by personal service of process or his voluntary appearance. When the word 'resident' is used in them, it must be taken as synonymous with 'domiciled persons.' * * * It is our conclusion, whatever grounds may be stated, that, in a suit for divorce, a valid judgment in personam, so as to effect a dissolution of the marriage contract, which shall be prevalent everywhere, may be rendered against a defendant not within the territorial jurisdiction during the progress of the suit, if that be the place of his citizenship and domicile, though process be served upon him only in some method prescribed by the laws of that jurisdiction as a substitute for personal service, and though he has not voluntarily appeared."

The court then proceeded to inquire whether or not the plaintiff in the suit then before the court had been domiciled in the state in which the judgment was obtained when the proceedings were pending, and then said:

"It [the foreign state] was not her domicile of origin, but she was abiding there when she was married with the defendant. After her marriage with him she continued to live there, in his household, as his wife, and of his family, having no separate domestic status or interest. There is no doubt that New Orleans was, before the marriage, during the continuance of the married relation, and has been ever since, the domicile of the defendant [the husband]. The domicile of the husband is prima facie the domicile of the wife. * * * The plaintiff was, therefore, if not before and at the time of the ceremony of marriage, at least after it had been performed, and as long as she remained in his household, domiciled in Louisiana, a denizen and citizen of that state, subject to its laws, and bound by them. There are, however, exceptions to the rule, one of which is invoked by the plaintiff in this suit, so that in certain cases a married woman may have a domicile in another jurisdiction than that of her husband. This is so when they are living under a judicial decree of separation, or when the conduct of the husband has been such as to entitle the wife to an absolute or limited divorce. She may acquire a separate domicile whenever it is necessary for her to do so. But the right to do so springs from the necessity for its exercise. * * * I see no reason to hold that the domicile of the plaintiff was other than that of the defendant, her husband. That domicile, as we have seen, was in the state of Louisiana. Thus they were both subject and amenable to the law of that state, and to the lawful rules and practice of its courts. The law of that state properly gave jurisdiction to its courts charged therewith to decree a divorce between them for any cause allowed by the law of that government, and it was for that state to determine for what causes and to what extent a divorce should be adjudged between married persons. It was exclusively for that state to determine for itself the status of all persons domiciled within it."

And it was held that the divorce granted in that state was binding upon the parties. In connection with this case it is only important to consider the case of Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794. In that case the courts of this state had refused to recognize a decree of divorce granted in the state of Kentucky, based upon substituted service; the defendant not having been personally served and not having appeared in the action. The facts as found by the court in that case were that on October 17, 1888, the parties were married at Clinton, Oneida county, N. Y.; the plaintiff being a resident of that place, and the defendant a resident of Louisville, Ky. Immediately after the marriage the parties went to and resided at Louisville, in the house with the defendant's parents, and there continued to reside as husband and wife until October 3, 1891. Then, owing to the cruel and abusive treatment of the husband, and without fault on her part,

she left him, taking his child with her, and a few days thereafter returned to her mother, in Clinton, with whom she had ever since resided, and from that time was a resident and domiciled in the state of New York, and had not lived or cohabited with the defendant. When she left her husband and went to Clinton, she did so with the purpose and intention of not returning to the state of Kentucky, but of permanently residing in the state of New York, and this purpose and intention were understood by the defendant at the time. The defendant continued to reside in Kentucky, and was a resident of that state. The defense to the action was that on March 14, 1893, in a court of Jefferson county, in the state of Kentucky, empowered to grant divorces, the defendant was granted a divorce from the plaintiff, which judgment was granted upon substituted service of the defendant in that action, and she did not appear. The question presented to the Supreme Court of the United States was whether the state of New York was obliged to give full faith and credit to this judgment of divorce, under the provisions of the first section of the fourth article of the federal Constitution. The court held that the judgment of the court in Kentucky was binding upon the parties, and that the state of New York was bound to receive it as settling the matrimonial status of the parties to that action. Mr. Justice Gray, in delivering the opinion of the court, said:

"The husband always had his domicile in Kentucky, and the matrimonial domicile of the parties was in Kentucky. * * * The court in New York found that the wife left the husband and went to Clinton with the purpose and intention of not returning to the state of Kentucky, but of permanently residing in the state of New York, and that this purpose and intention were understood by the husband at the time, and were contemplated and evidenced by the agreement executed by the parties in Kentucky, October 10, 1891. But that agreement was among the proofs submitted to the court in Kentucky, and may well have been considered by that court, as the preamble to the agreement states, as simply intended to provide for the interest of their child, recognizing that the parties had ceased to live together as husband and wife, but without in any way acknowledging upon whom is the fault, or condoning the conduct of the one or the other which has led to the existing state of affairs, or preventing any consequence which may follow or right which may arise to either party if such status shall continue. * * * We are of opinion that the undisputed facts show that such efforts were required by the statutes of Kentucky, and were actually made, to give the wife actual notice of the suit in Kentucky, as to make the decree of the court there, granting a divorce upon the ground that she had abandoned her husband, as binding on her as if she had been served with notice in Kentucky, or had voluntarily appeared in the suit. Binding her to that full extent, it established beyond contradiction that she had abandoned her husband, and precludes her from asserting that she left him on account of his cruel treatment. * * * The result is that the courts of New York had not given to the Kentucky decree of divorce the faith and credit which it had by law in Kentucky, and that therefore their judgments must be reversed."

I have cited these cases at length, as, under the principles established by them, I think that the matrimonial domicile of the parties to this action was in the state of Vermont, and that the refusal of the plaintiff to continue to live there, in the home provided for her by her husband, and her departure from that state without his consent, did not change her domicile, or divest the courts of that state

.of jurisdiction to determine the matrimonial status of the parties to this action. The actual domicile of the defendant in the state of Vermont from May, 1896, to the entry of the judgment in the Vermont action, is proved by uncontradicted evidence. He owned property there; he had voted there; he had been a town official there, qualification for which required actual residence for a year; and his wife and family had actually resided there for five years. That such domicile was not acquired merely for the purpose of getting a divorce is clear. There can be no doubt but that the domicile of the husband was also the domicile of the wife while she lived there with him, and that in that state was the actual matrimonial domicile of both parties to the action. The plaintiff left the residence provided for her by her husband without his knowledge or consent, and she stated that she left it determined not to return; but the Supreme Court of the United States has decided in the Atherton Case that the presumption was that the domicile of the wife was the domicile of the husband, notwithstanding the fact that the wife had left the state, not intending to return, and that the courts of that state still had jurisdiction to determine the status of the parties, and a judgment duly rendered according to the law of that state was binding upon the parties. There is no question in this case but that the action commenced in Vermont was in a court having jurisdiction, that service of process was made as required by the laws of that state, and that, long before the case came on for hearing, the plaintiff had actual knowledge of the pendency of the action, and refused to appear, upon advice of counsel; and, as the matrimonial domicile of the parties was in that state, the judgment of the court of that state decreeing a divorce was binding upon the parties, and the courts of this state were bound to give to it, under the federal Constitution, full faith and credit. I think, therefore, that the matrimonial relations between the parties were dissolved by the Vermont judgment.

It follows that the judgment appealed from must be reversed and a new trial ordered, with costs to appellant to abide event. All concur.