POST v. POST.

(Supreme Court, Appellate Division, First Department.   March 8, 1912.)

**1.** DIVORCE (§ 326*)—FOREIGN JUDGMENT—VALIDITY.

Where a man and woman married in Louisiana, and then went to Texas to live, and there acquired a matrimonial domicile, which continued until the wife deserted the husband and went to another state, whereupon he sued for and obtained a divorce in Texas on service made on the wife as provided by the Texas statutes, the divorce was valid, and must be given effect in New York, under the full faith and credit clause of the federal Constitution.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 827–830; Dec. Dig. § 326.*]

**2.** DOMICILE (§ 5*)—HUSBAND AND WIFE.

A wife may acquire a domicile separate from her husband where his conduct justifies her in leaving him, or where he deserts her without cause.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 24–35; Dec. Dig. § 5.*]

**3.** COURTS (§ 12*)—JURISDICTION OVER PERSON OF DEFENDANT—DOMICILE OF DEFENDANT.

Where a defendant is not personally served within the state, and does not appear in the action, jurisdiction of the court over him depends on whether or not he is domiciled within the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 32–37, 40, 43, 45; Dec. Dig. § 12.*]

**4.** DIVORCE (§ 326*)—FOREIGN JUDGMENT—VALIDITY.

Where a husband remains in the state of the matrimonial domicile, the courts of the state in an action by him for divorce may determine, under reasonable requirements as to notice to the wife, whether her absence from her husband was justifiable, and their decision is conclusive, but, where a husband goes into another state, the determination of the courts thereof is not entitled to full faith and credit, unless the wife is personally served within the state or appears in the action.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 827–830; Dec. Dig. § 326.*]

**5.** MARRIAGE (§ 65*)—ANNULMENT—DECREE—CONCLUSIVENESS.

A judgment annulling a marriage on the ground that the wife had a former husband living and undivorced, rendered pursuant to a decision that the divorce obtained by the former husband in a sister state was invalid, dissolves the marriage, though the decision is erroneous for failing to give full faith and credit to the decree of divorce.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 139; Dec. Dig. § 65.*]

**6.** MARRIAGE (§ 59*)—ACTION TO ANNUL—EVIDENCE.

In a suit by a husband to annul his marriage on the ground that the wife had been previously married twice, and never legally divorced from one of her husbands, the wife may show a valid decree of divorce obtained by her first husband in a sister state, and that a court of New York annulled her second marriage on the erroneous theory that the first divorce was invalid.

[Ed. Note.—For other cases, see Marriage, Dec. Dig. § 59.*]

Appeal from Special Term, New York County.

Action by Augustus T. Post against Emma C. Post.   From a judgment of the Special Term (71 Misc. Rep. 44, 129 N. Y. Supp. 754) dismissing the complaint, plaintiff appeals.   Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, CLARKE, and MILLER, JJ.

Charles W. Coleman, for appellant.

John J. Kirby, for respondent.

McLAUGHLIN, J. Action to annul a marriage on the ground that at the time the contract was entered into the defendant had another husband. There is little or no dispute between the parties as to the material facts. It appears that on January 5, 1871, the defendant was married in the state of Louisiana to one John S. Keaghey; that after the marriage they resided in Louisiana until November, 1875, when they moved to Galveston, Tex., and there continued to live together as husband and wife until some time in May, 1878, when, for sufficient cause, the defendant left her husband and went to New Orleans, La.; that when she left she did not intend to, and never has, returned to Keaghey; that in February, 1882, Keaghey, who had continued to reside in Texas, commenced an action against her in that state for a dissolution of the marriage on the ground of abandonment; that, pursuant to the laws of Texas, she was personally served in New Orleans with a notice to appear in the action and with a certified copy of the petition, but she did not appear, and a decree was thereafter entered upon her default dissolving the marriage; that in August, 1895, she married one Holliday, in the state of New York, where they resided for some time; that subsequently she commenced an action in the Supreme Court of that state for a separation on the ground of abandonment; that he appeared in the action and as a counterclaim asked that the marriage be annulled on the ground that she never had been legally divorced from Keaghey; that this contention was sustained by the court, and a judgment entered on December 1, 1898, annulling the marriage; that subsequently the plaintiff and defendant were married in the state of New York, where they then and have since resided; that Keaghey and Holliday were both living when this marriage was entered into; that the plaintiff and defendant lived together as husband and wife until 1907, when this action was commenced, the complaint alleging both the former marriages of the defendant and that her marriage with Keaghey was in full force and effect at the time she married the plaintiff, and the judgment demanded was that the marriage be declared void. At the conclusion of the trial—the foregoing facts have been established—the court dismissed the complaint upon the merits, holding that the defendant was legally free to marry at the time of her marriage with the plaintiff. From the judgment entered to this effect the plaintiff appeals.

[1] The principal question presented by the appeal is the validity of the Texas decree dissolving defendant's marriage with Keaghey. The appellant's contention is that this decree will not be recognized as valid in the state of New York because at the time the suit was brought the defendant had acquired a separate domicile in Louisiana; she was not personally served with process in Texas; did not appear in the suit; and for that reason the Texas court did not acquire ju-

risdiction over her. At the trial evidence was offered to the effect that defendant, at the time the Keaghey action was commenced, considered Texas as her permanent home or domicile, but this question seems to me to be immaterial, because, if it be conceded that she never intended to return to Texas after leaving Keaghey, I am of the opinion that the validity of the Texas decree is nevertheless conclusively established by the decision of the United States Supreme Court in the case of Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794, in which the essential facts were quite similar to these. In that case the parties were married in New York, but moved immediately to Kentucky, where they lived as husband and wife for some three years. The wife then left her husband, owing to his cruel and abusive treatment without fault on her part, and returned to her former home in New York. The husband remained in Kentucky, and there brought an action for divorce on the ground of desertion. Notice of the commencement of the action was sent by mail to the wife in New York, in accordance with the statutes of Kentucky, but she did not appear, and a decree was entered dissolving the marriage. Subsequently she brought an action in the state of New York for a separation, in which the husband appeared and set up the Kentucky decree as a bar. The court refused to recognize the validity of this decree, it having been rendered on constructive service without jurisdiction over the person of the wife, and granted the plaintiff a judgment as prayed for in her complaint. This judgment was affirmed by the Court of Appeals (155 N. Y. 129, 49 N. E. 933, 40 L. R. A. 291, 63 Am. St. Rep. 650), but reversed by the Supreme Court of the United States (181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794). In reversing the judgment the court said:

"In this case the divorce in Kentucky was by the court of the state which had always been the undoubted domicile of the husband, and which was the only matrimonial domicile of the husband and wife. The single question to be decided is the validity of that divorce, granted after such notice had been given as was required by the statutes of Kentucky. * * * We are of opinion that the undisputed facts show that such efforts were required by the statutes of Kentucky and were actually made to give the wife actual notice of the suit in Kentucky as to make the decree of the court there granting a divorce upon the ground that she had abandoned her husband as binding on her as if she had been served with notice in Kentucky or had voluntarily appeared in the suit. Binding her to that full extent, it established beyond contradiction that she had abandoned her husband, and precludes her from asserting that she left him on account of his cruel treatment."

This is precisely the situation in the case at bar so far as it relates to the Texas decree. At the time the defendant separated from Keaghey the matrimonial domicile of the parties was, and for some years prior thereto had been, the state of Texas. It continued to be the domicile of the husband, and no claim is made that service was not made upon the defendant in the manner required by the Texas statutes, or that these requirements were not such as to give her reasonable notice; on the contrary, it is established beyond dispute that she did have actual notice of the commencement of the suit. This being so, the court is bound to hold that the Texas decree was valid

and binding upon the defendant, so that she was legally free from her marriage with Keaghey at the time she married the plaintiff.

There is nothing in the case of Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, which in any wise weakens this conclusion. Four of the justices were of the opinion that under the facts in that case the foreign divorce was entitled to recognition and the majority of the court specifically reasserted the rule laid down in Atherton v. Atherton. The facts in the Haddock Case were that the parties were married in New York, but immediately separated and the husband subsequently acquired a domicile in Connecticut, where he obtained a divorce on constructive service only. Subsequently the wife brought an action for a separation in the state of New York, where she had continued to reside, and it was held that the Connecticut decree was not a bar to her action. The majority of the court placed its decision upon the ground that Connecticut was never the actual or constructive matrimonial domicile, since the husband had deserted the wife in New York and she there continued to be domiciled, for which reason the Connecticut court did not acquire, by constructive service, jurisdiction over the wife.

It is urged that the Atherton Case was overruled by the Haddock Case, but this clearly is not so, and, when properly considered, it seems to me they are not at all in conflict.

[2] It is settled that a wife may acquire a domicile separate from her husband, where his conduct justifies her in leaving him, or where he deserts her without just cause. Gray v. Gray, 143 N. Y. 354, 38 N. E. 301; Hunt v. Hunt, 72 N. Y. 217, 28 Am. Rep. 129; Cheever v. Wilson, 9 Wall. 108, 19 L. Ed. 604.

[3] In cases where the defendant is not personally served within the state and does not appear in the action, the jurisdiction of the court over the person of the defendant depends upon whether or not the defendant is domiciled within the state. It logically follows, therefore, that where a husband and wife have separated, and he sues for divorce in the state where he resides without personal service, and without her appearing in the action, then the question whether the court obtains jurisdiction or not depends upon whether she has acquired a separate domicile; that is, whether she was or was not justified in separating from him.

[4] That, in turn, presents the further question whether without personal service upon her, or her voluntary appearance, the courts of the state of his domicile can make a determination that she was not justified in leaving him, which will be binding upon her and entitled to recognition in all the other states under the full faith and credit clause of the federal Constitution. That question was settled by the Supreme Court of the United States (Atherton v. Atherton, supra), when it held that, where the husband remained in the state of the matrimonial domicile, the courts of that state had the power to determine, under reasonable requirements as to notice, whether or not her absence was justifiable, and that such determination is entitled to full faith and credit in other states; while, if the husband goes into another state, not the matrimonial domicile, the determination of

the courts of such other state is not entitled to full faith and credit unless the wife is personally served within the state or appears in the action. Haddock v. Haddock, supra. In Townsend v. Van Buskirk, 22 App. Div. 441, 48 N. Y. Supp. 260, Cullen, J., said that "an action for divorce is to a certain extent an action in rem"; the res being the relation of the parties. This res is undoubtedly located at the matrimonial domicile, and there continues until destroyed by death or judicial decree. However this may be, it is settled that where a wife leaves the matrimonial domicile, even though justified in doing so, a decree of divorce, properly granted by the courts of that state, at the suit of the husband, who remains there, must be recognized as binding in all other states. Atherton v. Atherton, supra; Hammond v. Hammond, 103 App. Div. 437, 93 N. Y. Supp. 1.

If the foregoing views be correct, then it follows that the Texas decree is binding upon the courts of this state, and that the defendant, at the time she married the plaintiff, could legally do so, notwithstanding her prior marriage to Keaghey.

[5] The remaining question is whether her marriage to Holliday was legally dissolved. That seems to me to be established beyond question by the judgment of the Supreme Court of this state. That judgment was upon the ground that she was then the legal wife of Keaghey, and so recites. In thus holding that the Texas decree was invalid the learned Justice before whom the action was tried, followed, as he was bound to do, the decision of the Court of Appeals in Atherton v. Atherton, 155 N. Y. 129, 49 N. E. 933, 40 L. R. A. 291, 63 Am. St. Rep. 650, which was handed down only a short time before the trial. The decision of the Court of Appeals was reversed by the Supreme Court of the United States, and, in view of such reversal, it must now be conceded that the judgment was erroneous, and the defendant's marriage with Holliday should not have been annulled. The judgment, however, was not appealed from. It still remains and is just as binding now as the day it was rendered. It conclusively establishes the annulment of her marriage with Holliday.

[6] In this connection, it is urged by the appellant that, if the defendant wishes to rely on this judgment as establishing the annulment of her marriage with Holliday, she can only do so by accepting it as an adjudication equally binding upon her that she had never been lawfully divorced from Keaghey. This presents an interesting question, but one which it seems to me, in view of the facts, unnecessary to consider at length. The plaintiff brings this action to annul his marriage with the defendant on the ground that she had previously been twice married, and had never been legally divorced from one of her former husbands. She had the right, in answer to his claim, to introduce in evidence the Texas decree for the purpose of showing that she had been judicially freed from Keaghey, and, in order to show that she was no longer married to Holliday, she certainly had the right to introduce the judgment rendered in this state. No one could reasonably claim that she was in any way precluded from introducing both judgments in evidence, and, once they were received in evidence, then their legal effect became a matter of law for the de-

termination of the court. There is no conceivable theory upon which this court can disregard, in view of the decision of the Supreme Court of the United States in Atherton v. Atherton, the effect of the Texas decree. It must be given full faith and credit under that decision, and is conclusive that the defendant was no longer the wife of Keaghey. The Holliday judgment is equally conclusive that she was no longer the wife of Holliday, and, so long as that judgment stands, neither the appellant, this court, nor any one else can disregard it. The Holliday judgment is erroneous, and the defendant's position is, to say the least, unique, and it may be, if by her act she could alter the effect of the decree, there would be some force in the appellant's contention. But she cannot do this. That judgment can only be set aside in a direct proceeding brought for that purpose, and this defendant, the only party to it now before the court, not only does not seek to set it aside, but, on the contrary, relies upon it. The fact that she does rely upon this judgment cannot reinstate her as the wife of Keaghey or lessen, to the slightest extent, the effect of the Texas decree.

My conclusion, therefore, is that at the time of her marriage with the plaintiff she was free to enter into the marriage contract, and the judgment appealed from should be affirmed, with costs. All concur.