[No. 29588. Department One. July 5, 1945.]

*In the Matter of the Estate of* SAMUEL D. CODLING, *Deceased.*
ALICE K. CODLING, *Individually and as Executrix,*
*Respondent,* v. MARY EDNA CODLING, *Appellant.*[1]

*Padden & Moriarty* and *Melvin T. Swanson,* for appellant.

*Chadwick, Chadwick & Mills* (*Platt, Henderson, Warner, Cram & Dickinson,* of counsel), for respondent.

GRADY, J.—This proceeding was brought before the court by the petition of Alice K. Codling, executrix of the estate of Samuel D. Codling, deceased, in which she alleged that she was the surviving widow of the decedent, and after his will had been admitted to probate Mary Edna Codling, claiming to be his only legal surviving widow, served upon

[1] Reported in 160 P. (2d) 635.

her a request that copies of all papers filed in the probate proceeding be served upon her attorneys. The petition further alleged that the decedent had obtained a decree of absolute divorce from Mary Edna Codling in the state of Louisiana, and subsequent thereto the petitioner had become his wife and was such at the time of his death. The prayer of the petition was that an order be entered finding that Mary Edna Codling had no interest in the probate of the estate of decedent, and directing the appearance filed by Mary Edna Codling to be disregarded by the executrix. In response to the petition, Mary Edna Codling filed an answer in which she claimed that the decree of divorce obtained by the decedent was null and void.

At the hearing of the petition, an exemplified copy of the divorce proceedings had in the state of Louisiana was received in evidence, witnesses testified, and certain facts were stipulated. At the close of the hearing, the court decided that the divorce decree was valid and entered an order authorizing the executrix to disregard the appearance made by Mary Edna Codling in the probate proceedings. An appeal has been taken from that order.

The factual situation, so far as is necessary to a determination of the question presented, is substantially as follows:

The decedent, Samuel D. Codling, and the appellant, Mary Edna Codling, were married in Vancouver, Washington, on February 29, 1912. Some time thereafter they moved to the state of Louisiana and became domiciled in that state. In the summer of 1930, appellant came to the city of Seattle and continued thereafter to reside there. Some time after her arrival in Seattle, she received a letter from her husband asking her not to return to their home. The appellant received subsequent letters from her husband, and he at all times knew her whereabouts and address at which she resided.

In 1934, Mr. Codling instituted proceedings for and obtained a decree of divorce in the state of Louisiana. Some time after obtaining the decree of divorce Mr. Codling became a resident of the state of Washington, and on March 11, 1940, he married the respondent, Alice K. Codling, and they

continued to reside in Seattle until the time of his death, which occurred March 13, 1944. The appellant was not aware of the divorce proceedings and did not learn that a decree of divorce had been entered until some time in the year 1944, although she gained knowledge of the second marriage of Mr. Codling after it had occurred in 1940.

The statute of the state of Louisiana (Dart's General Statutes, § 2208) pursuant to which Mr. Codling obtained the decree of divorce, reads as follows:

"In any action for separation from bed and board or divorce, where the defendant is absent from the state, or in case of reconvention, when the plaintiff is absent from the state; and in actions for divorce based on a judgment of separation from bed and board, when the adverse party is absent from the state, the court having jurisdiction over the cause shall, upon the application by any party in interest, appoint a curator ad hoc to represent such absent party, and all proceedings shall be had contradictorily with said curator ad hoc, and any judgment or divorce may be rendered against same curator ad hoc as might be rendered against his principal as if he were present in person in open court."

This statute contains no requirement that any form of notice be given to an absent or nonresident defendant either by personal service thereof outside the state, or by mail to the last-known residence, or by publication.

The exemplified copy of the divorce proceedings shows that the court appointed a curator ad hoc to represent the appellant, and that he filed an answer consisting of a general denial upon information and belief and demanded strict proof of the allegations of the petition for divorce.

In their approach to the constitutional question raised and its effect upon the jurisdiction of the court to enter the decree of divorce, the domicile of the respective parties has been only stressed incidentally, but it seems to us this question necessarily enters into a proper decision of the case, in view of the conflicting views expressed in the recent case of *Williams v. North Carolina*, 317 U. S. 287, 87 L. Ed. 279, 63 S. Ct. 207, 143 A. L. R. 1273. That case, taken as a whole, and others we have read also cause us to hesitate to adopt the view of respondent that we have no question of

procedural due process before us, and we therefore are moved to reach our conclusion upon the assumption that the due process clause of the constitution is involved.

The record does not show that the Louisiana court made any findings of fact, and the decree would indicate that it did not do so. The substance of the decree is as follows:

"When after hearing pleadings and evidence and the Court considering the law and the evidence to be in favor of Plaintiff, for the reasons orally assigned.

"It is ordered, adjudged and decreed, that there be Judgment in favor of Plaintiff, Samuel David Codling, and against defendant, Mary Edna Lowry Codling, his wife, decreeing an absolute divorce between them."

The petition for divorce alleged that the defendant deserted the plaintiff, that their separation had existed for a period of more than four years and for that period of time the state of Louisiana had been their matrimonial domicile. We must assume from the decree that the matrimonial domicile of both parties was in Louisiana when the separation occurred and when the action for divorce was commenced.

At the hearing of this case, there was testimony tending to show that some time after Codling wrote to his wife requesting that she not return to her home she established her residence in Washington, but this fact did not affect the matrimonial domicile of the parties, even if we assume that such act on his part justified her in thereafter making her residence in this state.

The question to be decided is whether the decree of divorce made and entered by the court of the state of Louisiana is valid and must be given full faith and credit by the courts of this state under Art. IV, § 1, of the constitution of the United States.

The theory of appellant is that the statute of the state of Louisiana, pursuant to which the decree of divorce was obtained, is unconstitutional and therefore the decree is void. The reason urged as to why the statute is unconstitutional is that it authorizes a decree of divorce without the service of any process upon an absentee or nonresident de-

fendant, other than upon a curator ad hoc, and, therefore, there is lacking that procedural due process of law that is required in order to support a judgment.

The contention of the respondent is that the whole subject of the creation and dissolution of the marital status is one exclusively for each state to determine; that each state has the right and power to determine the procedure for the dissolution of the marriage and the nature, kind and character of process to be served, and the manner of making such service upon a defendant; that the statute, in so far as it authorizes the dissolution of the marital status of the parties, is not governed by the due process clause of the fourteenth amendment to the constitution of the United States.

The cases cited by appellant in support of her argument that, in order to make proper provision for process, a statute prescribing a form of substituted service must be such that it is reasonably probable that the absentee or non-resident defendant would receive actual notice of the proceeding taken against him, involved situations in which rights *in personam* or property rights were considered. They proceed upon the theory that a statute providing for such substituted service of process as serving upon a designated person or officer must contain a requirement that such statutory agent shall notify the defendant that such process has been served, and if it does not do so it affords a means whereby rights *in personam* and property rights may be affected without a defendant being given an opportunity of appearing and making a defense, and thus he is denied due process of law. If we had before us a situation where rights *in personam* or property rights of appellant were affected by the decree of divorce, the cases cited would be controlling, because the Louisiana statute does not require the curator ad hoc to notify a defendant in a divorce action that such an action has been commenced by the service of process upon him. The statute, as construed by the Louisiana supreme court in *Johnson v. Jones,* 170 La. 760, 129 So. 155, does not contemplate any action on the part of the curator ad hoc when process is served

upon him, other than to receive the process and file an answer putting the plaintiff on his proof of the allegations of his petition. He is not required to make any effort to ascertain the whereabouts of the absentee defendant or make any effort to notify the defendant of the pending proceedings.

We have noted in our study of the questions raised that generally the various state statutes providing for a substituted service require that an attempt be made to notify the defendant by mail addressed to his last-known place of residence and to publish a summons. The procedural process for service upon an absent or nonresident defendant in a divorce action prescribed by the state of Louisiana appears to be in a class all by itself; but its statute declares the policy adopted by a sovereign state, and by so doing it acted within its powers, and under our system of government the courts of other states have no right to deny its effect in giving to its courts jurisdiction to render a decree of divorce.

The rules pronounced by the cases cited are not applicable to divorce proceedings. In those cases it was necessary to acquire jurisdiction of the persons of the respective defendants in order to support the kind of judgments sought. In a divorce proceeding, jurisdiction of the person of an absentee or nonresident defendant is not required when the action is brought in the state of the matrimonial domicile of the parties. Each state has full power and authority to determine the mode, manner, time, and place of prosecution of a proceeding for the dissolution of a marriage, and this would include a determination of the kind and character of notice or process to be given or served upon the defendant in the action and the mode and manner of such service; and when the statutory procedure is strictly followed in the state of the matrimonial domicile of the parties, the decree is entitled to full faith and credit in every other state. *Buckley v. Buckley,* 50 Wash. 213, 96 Pac. 1079, 126 Am. St. 900; *Pennoyer v. Neff,* 95 U. S. 714, 24 L. Ed. 565; *Atherton v. Atherton,* 181 U. S. 155, 45 L. Ed. 794, 21 S. Ct. 544; *Haddock v. Haddock,* 201 U. S. 562, 50

L. Ed. 867, 26 S. Ct. 525; *Williams v. North Carolina*, 317 U. S. 287, 87 L. Ed. 279, 63 S. Ct. 207; *Hughes v. Hughes*, 211 Ky. 799, 278 S. W. 121; *Lepenser v. Griffin*, 146 La. 584, 83 So. 839; *Hunt v. Hunt*, 72 N. Y. 217, 28 Am. Rep. 129; *Hammond v. Hammond*, 103 App. Div. 437, 93 N. Y. Supp. 1, 16, N. Y. Ann. Cas. 210; 17 Am. Jur. 150, Divorce, § 7, 276, § 247.

The reasons given for the rules are that an action to secure a divorce has for its purpose the severance of the marital status. The decree of divorce does not affect any right *in personam* or any property right of the defendant. The action is said by some courts and text writers to be a proceeding *in rem*, or at any rate one so much like it as to be governed by the same principles so far as the necessity of acquiring jurisdiction of the person is concerned.

We have cited only a few of the large number of cases to be found on the subject before us. The cited cases cite many others. In some respects they may contain seemingly conflicting views, but on the particular question we have before us we do not find any substantial conflict.

The courts, in the *Pennoyer* and *Haddock* cases, *supra*, did not have the same question before them that is involved here, but they recognized the principles of law we are applying in this case and are cited so extensively in other cases on the subject we feel justified in citing them as authority for the conclusion we have reached.

We do not desire to extend this opinion by quotations from the authorities cited, but the following excerpt from *Pennoyer v. Neff*, *supra*, is so often quoted we feel justified in setting it forth here:

"To prevent any misapplication of the views expressed in this opinion, it is proper to observe that we do not mean to assert, by any thing we have said, that a State may not authorize proceedings to determine the *status* of one of its citizens towards a non-resident, which would be binding within the State, though made without service of process or personal notice to the non-resident. The jurisdiction which every State possesses to determine the civil *status* and capacities of all its inhabitants involves authority to prescribe the conditions on which proceedings affecting them may be commenced and carried on within its territory. The

State, for example, has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved. One of the parties guilty of acts for which, by the law of the State, a dissolution may be granted, may have removed to a State where no dissolution is permitted. The complaining party would, therefore, fail if a divorce were sought in the State of the defendant, and if application could not be made to the tribunals of the complainant's domicile in such case, and proceedings be there instituted without personal service of process or personal notice to the offending party, the injured citizen would be without redress."

Although reference is made by the court in the above quotation to proceedings binding within the state where taken, such proceedings are likewise binding in other states if the court acquired jurisdiction of the subject matter of the divorce action.

We have made reference to the "matrimonial domicile" of the parties because such is the situation before us in this case, but we do not desire to convey the idea that the same rules we have pronounced would not apply to a case in which the domicile of the plaintiff was a state other than the matrimonial domicile. It must be admitted that there is a difference of opinion upon the latter phase of the subject, and we have for that reason confined ourselves to the precise situation as disclosed by the record.

Many of the cases cited and the others we have read on the subject now before the court, with a few exceptions, have considered the question of whether the decree of divorce was one that must be given full faith and credit in a sister state when substituted service of process was made rather than the kind or character of process necessary. In none of the cases where the decree of divorce was rendered in the state of Louisiana in an action brought by one domiciled in that state has it been held that service of process upon a curator ad hoc was not sufficient to give the court jurisdiction of the subject matter of the action. The courts deciding those cases have held that, if the matrimonial domicile of the parties was in the state of Louisiana, a de-

cree rendered upon the service of process prescribed by that state was valid and entitled to full faith and credit and have based their conclusions upon the ground that each state has the power to determine the kind and character of substituted service of process to be used in actions for a divorce.

It may be, as suggested by appellant, that the Louisiana statute enables a person to secure a divorce from his or her wife or husband while the latter may be temporarily absent from the state without such spouse knowing anything about the divorce proceedings until after a decree has been entered and thus be the means of great injustice. This all may be true, but such an argument must be addressed to the lawmaking body and not to the courts. The legislature of the state of Louisiana acted within its lawful powers in enacting the statute providing the kind of process to be served and the method of serving it upon an absentee defendant in divorce actions. The court in Louisiana acquired jurisdiction when the statute was complied with to make and enter the decree it did, and the trial court was correct in giving the decree full faith and credit.

The judgment is affirmed.

BEALS, C. J., MILLARD, STEINERT, and JEFFERS, JJ., concur.